INTERNATIONAL UNION, UNITED AUTOMO-
BILE, AEROSPACE & AGRICULTURAL IM-
PLEMENT WORKERS OF AMERICA (UAW),
AFL–CIO *v.* HOOSIER CARDINAL CORP.

No. 387.   Argued January 27, 1966.—Decided March 24, 1966.

*Stephen I. Schlossberg* argued the cause for petitioner. With him on the briefs were *Joseph L. Rauh, Jr.,* and *John Silard.*

*Harry P. Dees* argued the cause and filed a brief for respondent.

MR. JUSTICE STEWART delivered the opinion of the Court.

Section 301 of the Labor Management Relations Act, 1947, confers jurisdiction upon the federal district courts over suits upon collective bargaining contracts.[1] Nowhere

---

[1] We use the term "collective bargaining contracts" for convenience only, and do not intend to suggest that § 301 is limited to such contracts. See *Retail Clerks* v. *Lion Dry Goods,* 369 U. S. 17. Section 301 provides:

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

"(b) Any labor organization which represents employees in an industry affecting commerce as defined in this Act and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as

in the Act, however, is there a provision for any time limitation upon the bringing of an action under § 301. The questions presented by this case arise because of the absence of such a provision.

The petitioner union and the respondent company were parties to a collective bargaining contract within the purview of § 301. The contract contained a section governing vacations. One clause in this section dealt with payment of accumulated vacation pay, by providing: "Employees who qualified for a vacation in the previous year and whose employment is terminated for any reason before the vacation is taken will be paid that vacation at time of termination." On June 1, 1957, prior to the expiration of the contract, the company terminated the employment of employees covered by the agreement, but it did not pay them any accumulated vacation pay. Since that date, two lawsuits have been brought to recover amounts allegedly due. The first was a class action in early 1958, brought against the company in an Indiana court, but the court ruled that such

an entity and against its assets, and shall not be enforceable against any individual member or his assets.

"(c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

"(d) The service of summons, subpena, or other legal process of any court of the United States upon an officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization.

"(e) For the purposes of this section, in determining whether any person is acting as an 'agent' of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling." 61 Stat. 156–157, 29 U. S. C. § 185 (1964 ed.).

an action was impermissible under Indiana law. In an attempt to remedy this pleading defect, the former employees assigned their vacation pay claims to a union representative who then filed an amended complaint, but this form of action, too, was held improper under Indiana law. Thereafter, by further amended complaints, the employees sought to reform and reinstitute the class action, but once again the trial court held the complaint insufficient as a matter of state law. The court dismissed the suit in June 1960, and the judgment of dismissal was affirmed on appeal. *Johnson* v. *Hoosier Cardinal Corp.*, 134 Ind. 477, 189 N. E. 2d 592.

Almost four years after the dismissal of that lawsuit by the Indiana trial court, and almost seven years after the employees had left the company, the union filed the present action in the United States District Court for the Southern District of Indiana. On the company's motion, the trial court dismissed the complaint, concluding that the suit was barred by a six-year Indiana statute of limitations. The court regarded this action as based partly upon the written collective bargaining agreement and partly upon the oral employment contract each employee had made, and it held that Indiana would apply to such a hybrid action its six-year statute governing contracts not in writing. Ind. Stat. Ann. § 2–601 (1965 Supp.). 235 F. Supp. 183. The Court of Appeals for the Seventh Circuit affirmed, 346 F. 2d 242, and we granted certiorari, 382 U. S. 808.

We note at the outset that this action was properly brought by the union under § 301. There is no merit to the contention that a union may not sue to recover wages or vacation pay claimed by its members pursuant to the terms of a collective bargaining contract. Such a suit is among those "[s]uits for violation of contracts between an employer and a labor organization" that § 301 was designed to permit. This conclusion is unimpaired

by the fact that each worker's claim may also depend upon the existence of his individual contract of employment. See *J. I. Case Co.* v. *Labor Board,* 321 U. S. 332, 335–336. In *Smith* v. *Evening News Assn.,* 371 U. S. 195, we rejected the view, once held for varying reasons by a majority of this Court, *Association of Westinghouse Salaried Employees* v. *Westinghouse Corp.,* 348 U. S. 437, "that § 301 did not give the . . . courts jurisdiction over a suit brought by a union to enforce employee rights . . . characterized as . . . arising 'from separate hiring contracts between the employer and each employee.'" 371 U. S., at 198. Although the *Smith* case was brought by an individual worker, there is every reason to recognize the union's standing to vindicate employee rights under a contract the union obtained. Such recognition is fully consistent with the language of § 301 (b): "Any . . . labor organization may sue . . . in behalf of the employees whom it represents in the courts of the United States." 61 Stat. 156, 29 U. S. C. § 185 (b) (1964 ed.).[2] And indeed, the union's standing to vindicate employee rights under § 301 implements no more than the established doctrine that the union's role in the collective bargaining process does not end with the making of the contract.[3]

---

[2] See also Rule 17 (a) of the Federal Rules of Civil Procedure; *Dowd Box* v. *Courtney,* 368 U. S. 502, 504; *United Steelworkers* v. *Enterprise Wheel & Car Corp.,* 363 U. S. 593.

[3] See, *e. g., Conley* v. *Gibson,* 355 U. S. 41, 46; Comment, 28 U. Chi. L. Rev. 707, 716.

That the employees in this case did not assign their claims to the union presents no barrier to the union's standing to sue in their behalf. Such a technical requirement would conflict with one of the widely recognized purposes of Congress in enacting § 301— the elimination of common-law procedural obstacles to suits for breach of collective bargaining agreements. See, *e. g., Textile Workers* v. *Lincoln Mills,* 353 U. S. 448, 451. Meltzer, The Supreme

Since this suit was properly brought under § 301, the question of its timeliness is squarely presented. It is clearly a federal question, for in § 301 suits the applicable law is "federal law, which the courts must fashion from the policy of our national labor laws." *Textile Workers* v. *Lincoln Mills,* 353 U. S. 448, 456. Relying upon that statement and upon the coordinate principle that "incompatible doctrines of local law must give way to principles of federal labor law," *Teamsters Local* v. *Lucas Flour Co.,* 369 U. S. 95, 102, the union contends that this suit cannot be barred by a statute of limitations enacted by a State. We are urged instead to devise a uniform time limitation to close the statutory gap left by Congress. But the teaching of our cases does not require so bald a form of judicial innovation. *Lincoln Mills* instructs that, in fashioning federal law, the "range of judicial inventiveness will be determined by the nature of the problem." 353 U. S., at 457. We do not question that there are problems so vital to the implementation of federal labor policy that they will command a high degree of inventiveness from the courts. The problem presented here, however, is not of that nature.

It is true that if state limitations provisions govern § 301 suits, these suits will lack a uniform standard of timeliness. It is also true that the subject matter of § 301 is "peculiarly one that calls for uniform law." *Teamsters Local* v. *Lucas Flour Co., supra,* at 103. Our cases have defined the need for uniformity, however, in terms that are largely inapplicable here:

"The possibility that individual contract terms might have different meanings under [two systems of law] would inevitably exert a disruptive influence upon both the negotiation and administration of col-

Court, Congress, and State Jurisdiction Over Labor Relations: II, 59 Col. L. Rev. 269.

lective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract. Once the collective bargain was made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its interpretation. Indeed, the existence of possibly conflicting legal concepts might substantially impede the parties' willingness to agree to contract terms providing for final arbitral or judicial resolution of disputes.

". . . The ordering and adjusting of competing interests through a process of free and voluntary collective bargaining is the keystone of the federal scheme to promote industrial peace. State law which frustrates the effort of Congress to stimulate the smooth functioning of that process thus strikes at the very core of federal labor policy." *Teamsters Local v. Lucas Flour Co.*, 369 U. S. 95, 103–104.

The need for uniformity, then, is greatest where its absence would threaten the smooth functioning of those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective agreement and the private settlement of disputes under it. For the most part, statutes of limitations come into play only when these processes have already broken down. Lack of uniformity in this area is therefore unlikely to frustrate in any important way the achievement of any significant goal of labor policy. Thus, although a uniform limitations provision for § 301 suits might well

constitute a desirable statutory addition, there is no justification for the drastic sort of judicial legislation that is urged upon us.[4] See *Smith* v. *Evening News Assn., supra,* at 203 (BLACK, J., dissenting).

That Congress did not provide a uniform limitations provision for § 301 suits is not an argument for judicially creating one, unless we ignore the context of this legislative omission. It is clear that Congress gave attention to limitations problems in the Labor Management Relations Act, 1947; it enacted a six months' provision to govern unfair labor practice proceedings, 61 Stat. 146, 29 U. S. C. § 160 (b) (1964 ed.), and it did so only after appreciable controversy.[5] In this context, and against the background of the relationship between Congress and the courts on the question of limitations provisions, it cannot be fairly inferred that when Congress left § 301 without a uniform time limitation, it did so in the expectation that the courts would invent one. As early as 1830, this Court held that state statutes of limitations govern the timeliness of federal causes of action unless

---

[4] Our cases have spoken of the federal law applicable to § 301 suits as "substantive," see, *e. g., Textile Workers* v. *Lincoln Mills,* 353 U. S., at 456, and the need for uniformity in the "substantive principles" that govern these suits. See *Teamsters Local* v. *Lucas Flour Co.,* 369 U. S., at 103. In the view we take of the problem presented here, we need not decide whether statutes of limitations are "substantive" or "procedural." See *Guaranty Trust Co.* v. *York,* 326 U. S. 99; *Burnett* v. *New York Central R. Co.,* 380 U. S. 424, 427, note 2. Nor need we rigidly classify them as "primary" or "remedial." To the extent that these terms are useful, we need only notice that lack of uniformity in limitations provisions is unlikely to have substantial effect upon the private definition or effectuation of "substantive" or "primary" rights in the collective bargaining process. See Wellington, Labor and the Federal System, 26 U. Chi. L. Rev. 542, 556–559.

[5] Compare, *e. g.,* the remarks of Senator Wagner, 93 Cong. Rec. 3323, and those of Senator Murray, 93 Cong. Rec. 4030, with the remarks of Senator Smith, 93 Cong. Rec. 4283.

Congress has specifically provided otherwise. *McCluny v. Silliman,* 3 Pet. 270, 277. In 1895, the question was re-examined in another context, but the conclusion remained firm. *Campbell v. Haverhill,* 155 U. S. 610. Since that time, state statutes have repeatedly supplied the periods of limitations for federal causes of action when federal legislation has been silent on the question.[6] *E. g., McClaine v. Rankin,* 197 U. S. 154, *Cope v. Anderson,* 331 U. S. 461 (National Bank Act); *Chattanooga Foundry v. Atlanta,* 203 U. S. 390 (Sherman Act); *O'Sullivan v. Felix,* 233 U. S. 318 (Civil Rights Act of 1870); *Englander Motors, Inc. v. Ford Motor Co.,* 293 F. 2d 802 (C. A. 6th Cir.) (Clayton Act); but see *Holmberg v. Armbrecht,* 327 U. S. 392 (Federal Farm Loan Act). Yet when Congress has disagreed with such an interpretation of its silence, it has spoken to overturn it by enacting a uniform period of limitations. *E. g.,* 69 Stat. 283, 15 U. S. C. § 15b (1964 ed.) (Clayton Act); 35 U. S. C. § 286 (Patent Act). See also *Herget v. Central Bank Co.,* 324 U. S. 4. Against this background, we cannot take the omission in the present statute as a license to judicially devise a uniform time limitation for § 301 suits.

Accordingly, since no federal provision governs, we hold that the timeliness of a § 301 suit, such as the

---

[6] In *McAllister v. Magnolia Petroleum Co.,* 357 U. S. 221, this Court held that, "where an action for unseaworthiness is combined with an action under the Jones Act a court cannot apply to the former a shorter period of limitations than Congress has prescribed for the latter." 357 U. S., at 224. The *McAllister* case represents no departure from the tradition discussed in the text. The Court's decision rested on the peculiar configuration of the federal maritime remedies. A seaman suing for both unseaworthiness and Jones Act negligence must do so in a single proceeding. *Baltimore S. S. Co. v. Phillips,* 274 U. S. 316. The Court had no occasion in *McAllister* to consider whether a state period longer than that provided in the Jones Act could be applied. 357 U. S., at 227 (BRENNAN, J., concurring).

present one, is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations.[7] This leaves two subsidiary questions to be decided. Which of Indiana's limitations provisions governs?[8] Does any tolling principle preserve the timeliness of this action?

The union argues that if the timeliness of this action is to be determined by reference to Indiana statutes, federal law precludes reference to the Indiana six-year provision governing contracts not in writing. Reference must be made instead, it is urged, to the Indiana 20-year provision governing written contracts. Ind. Stat. Ann. § 2–602 (1965 Supp.). This contention rests on the view that under federal law this § 301 suit must be re-

---

[7] The present suit is essentially an action for damages caused by an alleged breach of an employer's obligation embodied in a collective bargaining agreement. Such an action closely resembles an action for breach of contract cognizable at common law. Whether other § 301 suits different from the present one might call for the application of other rules on timeliness, we are not required to decide, and we indicate no view whatsoever on that question. See, *e. g.*, *Holmberg* v. *Armbrecht*, 327 U. S. 392; *Moviecolor Limited* v. *Eastman Kodak Co.*, 288 F. 2d 80 (C. A. 2d Cir.); 2 Moore Federal Practice ¶ 3.07[1]–[3], at 740–764 (2d ed. 1965); Hill, State Procedural Law in Federal Nondiversity Litigation, 69 Harv. L. Rev. 66, 111–114.

[8] The record indicates that Indiana is both the forum State and the State in which all operative events occurred. Neither party has suggested that the limitations provision of another State is relevant. There is therefore no occasion to consider whether such a choice of law should be made in accord with the principle of *Klaxon Co.* v. *Stentor Mfg. Co.*, 313 U. S. 487, or by operation of a different federal conflict of laws rule. See *Richards* v. *United States*, 369 U. S. 1; *De Sylva* v. *Ballentine*, 351 U. S. 570; *Vanston Bondholders Protective Committee* v. *Green*, 329 U. S. 156; *McKenzie* v. *Irving Trust Co.*, 323 U. S. 365; *D'Oench, Duhme & Co.* v. *Federal Deposit Ins. Corp.*, 315 U. S. 447. See also discussion in Hart & Wechsler, The Federal Courts and the Federal System 696 *et seq.*

garded as exclusively bottomed upon the written collective bargaining agreement. We agree that the characterization of this action for the purpose of selecting the appropriate state limitations provision is ultimately a question of federal law. *Textile Workers* v. *Lincoln Mills, supra; McClaine* v. *Rankin, supra.* But there is no reason to reject the characterization that state law would impose unless that characterization is unreasonable or otherwise inconsistent with national labor policy. Cf. *Reconstruction Finance Corp.* v. *Beaver County,* 328 U. S. 204, 210; *De Sylva* v. *Ballentine,* 351 U. S. 570, 580–582.

Applying this principle, we cannot agree that federal law requires that this action be regarded as exclusively based upon a written contract. For purposes of § 301 jurisdiction, we have rejected the view that a suit such as this is based solely upon the separate hiring contracts, frequently oral, between the employer and each employee. *Smith* v. *Evening News Assn., supra.* It does not follow, however, that the separate contracts of employment may not be taken into account in characterizing the nature of a specific § 301 suit for the purpose of selecting the appropriate state limitations provision. Indeed, as the present case indicates, consideration of the separate contracts for that purpose is entirely acceptable. The petitioner seeks damages based upon an alleged breach of the vacation pay clause in a written collective bargaining agreement. Proof of the breach and of the measure of damages, however, both depend upon proof of the existence and duration of separate employment contracts between the employer and each of the aggrieved employees. Hence, this § 301 suit may fairly be characterized as one not exclusively based upon a written contract.

Moreover, the characterization that Indiana law imposes upon this action does not lead to any conflict with

federal labor policy. Indeed, to the extent that a policy is manifest in the Labor Management Relations Act, it supports acceptance of the characterization adopted here. The six months' provision governing unfair labor practice proceedings, 61 Stat. 146, 29 U. S. C. § 160 (b), suggests that relatively rapid disposition of labor disputes is a goal of federal labor law. Since state statutes of limitations governing contracts not exclusively in writing are generally shorter than those applicable to wholly written agreements, their applicability to § 301 actions comports with that goal. There may, of course, be § 301 actions that can only be characterized fairly as based exclusively upon a written agreement. But since many § 301 actions for wages or other individual benefits will concern employment contracts of the sort involved here, there is no reason to inhibit the achievement of an identifiable goal of labor policy by precluding application of the generally shorter limitations provisions.[9]

Accordingly, we accept the District Court's application of the six-year Indiana statute of limitations to this action. Cf. *Bernhardt* v. *Polygraphic Co.*, 350 U. S. 198, 204–205; *Steele* v. *General Mills*, 329 U. S. 433, 438. Thus, since this federal lawsuit was not filed until almost seven years after the cause of action accrued, the cause

---

[9] Other questions would be raised if this case presented a state law characterization of a § 301 suit that reasonably described the nature of the cause of action, but required application of an unusually short or long limitations period. See, *e. g.*, N. M. Stat. § 59–3–4 (1953) (an action for wages "must be commenced within sixty [60] days from the date of discharge. . . ."). See *Campbell* v. *Haverhill*, 155 U. S. 610, 615; *Caldwell* v. *Alabama Dry Dock & Shipbuilding Co.*, 161 F. 2d 83 (C. A. 5th Cir.); Mishkin, The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision, 105 U. Pa. L. Rev. 797, 805–806.

is barred by the six-year statute unless that statute was somehow tolled by reason of the particularized circumstances of this case.[10]

The contention that some tolling principle saves the life of this action was raised for the first time in this Court. In any event, we find the contention without merit. In *Burnett* v. *New York Central R. Co.,* 380 U. S. 424, we held that the bringing of a timely action under the Federal Employers' Liability Act in a state court, even though venue was improper, served to toll the statute of limitations contained in that Act. The primary underpinning of *Burnett,* however, is wholly lacking here. As the Court noted in that case, a tolling principle was necessary to implement the national policy of a uniform time bar clearly expressed by Congress when it enacted the FELA limitations provision. 380 U. S., at 434. Section 301 of the Labor Management Relations Act establishes no such policy of uniformity expressed in a national limitations provision. Moreover, unlike the plaintiff in *Burnett* who could no longer bring a timely federal action after the state court dismissed his complaint, the union here had a full three years to bring this lawsuit in federal court after the dismissal of the state court action.[11] Under these circumstances, we have no difficulty in concluding that this cause of action expired in June 1963, six years after it arose.

*Affirmed.*

---

[10] Neither party has suggested that the cause of action "accrued" on any date other than June 1, 1957, when the company terminated the employees' jobs. Cf. *Rawlings* v. *Ray,* 312 U. S. 96; *Cope* v. *Anderson,* 331 U. S. 461; *Moviecolor Limited* v. *Eastman Kodak Co.,* 288 F. 2d 80, 83 (C. A. 2d Cir.).

[11] It should be noted also that Indiana has a saving statute, Ind. Ann. Stat. § 2–608 (1946 Repl. Vol.), but the union has never contended that it preserves the timeliness of this suit.

MR. JUSTICE WHITE, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE BRENNAN join, dissenting.

Certain principles are undisputed in this case. The period of limitations for § 301 suits is to be determined by federal law; and, since Congress has made no express provision for any time limitation, this Court must fashion the governing rule. By adopting the statutes of the several States, the Court creates 50 or more different statutes of limitations[1] rather than fashioning a uniform rule after consideration of relevant federal and state statutes.

The Court justifies its decision in part by reliance on cases decided under the Rules of Decisions Act, 28 U. S. C. § 1652 (1964 ed.), which interpreted "the silence of Congress . . . to mean that it is federal policy to adopt the local law of limitation." *Holmberg* v. *Armbrecht,* 327 U. S. 392, 395; see, *e. g., Chattanooga Foundry* v. *Atlanta,* 203 U. S. 390, 397; *Campbell* v. *Haverhill,* 155 U. S. 610; *McCluny* v. *Silliman,* 3 Pet. 270, 277. But the cases also establish that the silence of Congress is not to be read as automatically putting an imprimatur on state law. Rather, state law is applied only because it supplements and fulfills federal policy, and the ultimate question is what federal policy requires. See *Board of County Comm'rs* v. *United States,* 308 U. S. 343, 350–352; *Holmberg* v. *Armbrecht,* 327 U. S. 392, 394–395; *Association of Westinghouse Salaried Employees* v. *Westinghouse Corp.,* 348 U. S. 437, 463 (Reed, J., concurring).

---

[1] The Court's approach adopts (and thereby creates as federal law) at least one limitations statute for each State and Territory. In many States it adopts a multitude of limitations provisions, each applicable to a particular type of § 301 suit. The Court's opinion suggests, for example, that had the present suit been "exclusively based upon a written contract," *ante,* at p. 706, the Indiana 20-year, rather than the six-year, statute would have governed.

More specifically, it is quite clear that with respect to § 301 suits congressional silence extends not just to the question of limitations but encompasses the entirety of the governing legal principles. Rather than inferring from congressional silence that state law was to govern, *Textile Workers* v. *Lincoln Mills,* 353 U. S. 448, held that the federal courts were to "fashion from the policy of our national labor laws" general federal law applicable to suits on collective bargaining agreements. *Id.,* at 456. Although *Lincoln Mills* recognized that "state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy," *id.,* at 457, it did not intimate in any way that federal policy would be furthered by the adoption of 50 different state rules. To the contrary, subsequent decisions have recognized that "[c]omprehensiveness is inherent in the process by which the law is to be formulated under the mandate of *Lincoln Mills*" and that, "[m]ore important, the subject matter of § 301 (a) 'is peculiarly one that calls for uniform law.' " *Teamsters Local* v. *Lucas Flour Co.,* 369 U. S. 95, 103. There is, therefore, no sound basis for saying that Congress by its silence on the limitations matter intended the state laws to apply or for adopting diverse state laws simply because of a reluctance to supply what Congress omitted. The courts *are* expected to develop the law of labor contracts, and this case represents only another task in this process.

The Court reasons, however, that to devise a uniform time limitation would be too "bald a form of judicial innovation." *Ante,* at p. 701. Cases defining a need for uniformity in § 301 suits are said to be limited to matters concerning which the possible application of varying systems of law " 'would inevitably exert a disruptive influence upon both the negotiation and administration of

collective agreements.'" *Ante*, at pp. 701–702. Since, according to the majority, the lack of a uniform statute of limitations would generally not have that effect,[2] the Court concludes that although such a uniform provision "might well constitute a desirable statutory addition, there is no justification for the drastic sort of judicial legislation that is urged upon us." *Ante*, at pp. 702–703.

The Court is undoubtedly correct in stating that a uniform limitations period would be desirable. Suppose, for example, that the collective bargaining contract in dispute was one made in Detroit for a multi-state unit of truck drivers and that, as is true in this case, 100 of the covered employees were discharged without payment of accumulated vacation pay. Suppose further that some of the employees were hired in Chicago and discharged in Indiana while others were hired in St. Louis, Cleveland, and Terre Haute and were discharged in Illinois, Michigan, and Iowa (in whatever combinations are preferred). Suppose, finally, that some sue in Indiana, some in other States, some in federal court, and some in state court. Simple justice dictates in such a situation

---

[2] However, limitations questions will have an impact on the negotiation and administration of the collective agreement in many instances—for example, if the parties decide to limit by contract the period for bringing suit. The laws of the several States vary with respect to the enforceability of such contractual limitations periods, particularly when it is asserted that the agreed period is unreasonable, see Williston on Contracts § 183, at 711, n. 10 (Jaeger 3d ed. 1957); Note, 63 Harv. L. Rev. 1177, 1181–1182 (1950). It may be assumed that, under the test advanced by the majority, uniform federal law will be fashioned to determine their validity, just as, at least in some circumstances, federal law will determine when the cause of action arose, see *Cope v. Anderson*, 331 U. S. 461; *Rawlings v. Ray*, 312 U. S. 96, and whether the running of limitations was tolled by fraudulent concealment, see *Holmberg v. Armbrecht*, 327 U. S. 392; *Moviecolor Limited v. Eastman Kodak Co.*, 288 F. 2d 80 (C. A. 2d Cir. 1961).

that the right of employees in different States to assert their federal claim should be equally available. Clearly there is no sense or justice in referring to 50 or more different statutes of limitations so that one employee may be barred after one year while another employee may sue any time within six years. Nor is there any reason why an employer operating under the contract in one State should be bothered with stale claims already barred as against other employers in other States.

Moreover, the Court's decision creates unnecessary complexities and opportunities for vexatious litigation, some of which are reflected in the Court's opinion. Thus the Court notes that in a situation involving multi-state contacts, such as the example given above, a federal court hearing the case would be required to decide whether to apply a federal, or the forum State's, conflict of laws rules to select the State of governing law. If this Court ultimately holds that a federal conflict of laws rule is to govern in federal court suits, the additional question will be presented of whether the federal conflict of laws rule must also be applied by state courts or whether they may continue to apply their own conflict of laws rule. Whatever conflict of laws rule, state or federal, is selected, there will remain the difficult task of applying that rule to find the State whose limitations statute is to control. In cases not involving multi-state contacts, the court may have to choose between two or more state statutes; here the choice is between the limitations period for suits on written contracts and the period for suits on oral contracts. Under today's decision, this choice is to be governed by the State's characterization of the federal action (or a federal court's Delphic opinion of what that characterization would be), "unless that characterization is unreasonable or otherwise inconsistent with national labor policy." *Ante,* at p. 706. The gov-

erning state limitations statute, having finally been determined, is to be applied unless the period is "unusually short or long." [3]  *Ante,* at p. 707, n. 9.  The problems we have indicated are merely illustrative of the complex questions that must be decided under the Court's approach before it can be determined which of several competing state statutes is to be applied and whether such application is reasonable when tested by the federal labor policy; undoubtedly the fertile imagination of counsel will conceive additional intricacies.  The desirability of a single, uniform, federal statute to further justice and to avoid such litigation-creating complexities was of course recognized by Congress in passing the statutes, to which the majority refers, that overruled in particular areas past refusals of this Court to fashion such a uniform rule.

The case for the Court's decision thus ultimately comes down to the proposition that fashioning a uniform federal statute would involve too bald an exercise of judicial innovation.  This is an argument I have difficulty in fathoming.  Courts have not always been reluctant to "create" statutes of limitations, the common-law doctrine of prescription by which judgments are presumed to have been paid after the lapse of 20 years, see *Gaines* v. *Miller,* 111 U. S. 395, 399; *McElmoyle* v. *Cohen,* 13 Pet. 312, 327, being just one example.  In equity they have applied the doctrine of laches, see *Holmberg* v. *Armbrecht,* 327 U. S. 392.  But here there is no dispute concerning whether a statute of limitations is to be fashioned—the choice is between one statute or 50.  If the Court is to develop the substantive law of labor contracts,

---

[3] Unfortunately the Court provides no enlightenment concerning where we are to look for a limitations period should the state statute be held unreasonable. Perhaps in extremis even the Court's approach will require the kind of innovation it now rejects.

which it has undertaken to do with the blessing of Congress, it seems odd that the Court should balk at establishing a single limitations period, drawn from any of the sources available to it, including the relevant federal and state statutes. I undertake no such canvass here,[4] but think the Court should do so. I therefore dissent.

---

[4] Nor do I intimate any opinion concerning the tolling question mooted in the Court's opinion.