Richard D. HUNT, Plaintiff,

v.

MISSOURI PACIFIC RAILROAD and International Brotherhood of Firemen and Oilers, AFL–CIO, Local 718, Defendants.

No. LR–C–82–211.

United States District Court, E.D. Arkansas, W.D.

April 1, 1983.

Gene O'Daniel, Little Rock, Ark., for plaintiff.

B.S. Clark, Chris Heller, Little Rock, Ark., for Mo. Pac. R.R.

John T. Lavey, Little Rock, Ark., and Eric J. Genser, Washington, D.C., for Intern. Broth.

## MEMORANDUM OPINION

ROY, District Judge.

Pending before the Court are motions for summary judgment filed by defendants

Missouri Pacific Railroad Company ("Mo-Pac") and International Brotherhood of Firemen and Oilers, AFL–CIO, Local 718 ("IBFO"). The defendants assert that they are entitled to judgment as a matter of law because there are no remaining issues of material fact.

The facts as set forth below are undisputed.

Plaintiff's cause of action arises out of his employment as a mechanical laborer with defendant MoPac. He was initially hired on September 5, 1979. During his employment with MoPac, plaintiff was represented for collective bargaining purposes by Local 718 of the IBFO.

On November 7, 1979, plaintiff was working the 11:00 p.m. to 7:00 a.m. shift and was engaged in cleaning locomotive engines. At some point after taking a lunch break at 3:00 a.m. he entered the bathroom, sat on the toilet and bent over, placing his arms on his legs and resting his head on his arms. He was seen in this position by one of his supervisors, and on November 13, 1979, he was discharged for "assuming a position of sleep from 4:35 a.m. until 4:57 a.m., November 7, 1979," and for failing to properly perform his duties from 11:00 p.m. to 7:00 a.m. (Dismissal Report, Exhibit C to IBFO's motion for summary judgment.)

The collective bargaining agreement applicable to plaintiff's terms and conditions of employment provides that a grievance may be submitted by or on behalf of any employee subject to the agreement within 60 days from the date of the occurrence on which the grievance is based. In the instant case, no grievance was instituted on plaintiff's behalf, even though he made several requests therefor.

The Constitution of the IBFO, which sets forth the governing rules of the union for all members of IBFO and its local unions, provides an internal union appeal procedure for members who are affected by any decision or order of a local union to bring an appeal directly to the president of IBFO. Under this provision, an appeal may be taken over the failure of a local chairman to file a grievance on behalf of an IBFO member or the failure, generally, to provide adequate representation to an IBFO member in a dispute with a carrier such as MoPac. Under the IBFO Constitution, the president of IBFO is empowered to rule on the merits of the appeal and to order appropriate relief, including directing a local chairman to file a timely grievance with the carrier on behalf of a member challenging the carrier's wrongful actions taken against that member. The same article of the Constitution provides that no member shall appeal to the civil courts for redress until after exhausting all rights of appeal prescribed in the Constitution.

Plaintiff did not pursue the internal union remedies available to him in the IBFO Constitution with regard to his complaint that Local 718 never filed a grievance on his behalf and denied him adequate representation in the dispute with MoPac over his discharge.

Plaintiff commenced this action against defendant MoPac and defendant Local 718 by filing a complaint with this Court on March 24, 1982, which alleged that MoPac breached the existing collective bargaining agreement in discharging plaintiff and that Local 718 breached the duty of fair representation owed to plaintiff with regard to the filing of grievances as to his discharge. Plaintiff then filed an amended complaint on June 1, 1982, containing the same allegations against Local 718 as reflected in the original complaint, but alleging in addition that Local 718 colluded with MoPac in not pursuing the grievance procedure and seeking contractual remedies for his discharge.

■ Plaintiff brought this lawsuit under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Section 301 specifically exempts employers and employees who are subject to the Railway Labor Act ("RLA"), 29 U.S.C. § 152. MoPac is a carrier within the meaning of the RLA and is therefore subject to its provisions. 45 U.S.C. § 151 First. Plaintiff is an employee within the meaning of the RLA. *Id.* Federal courts do not have jurisdiction under 29 U.S.C. § 185 over suits

brought by parties that are covered by the RLA. *Raus v. Brotherhood of Railway Carmen of the United States and Canada,* 663 F.2d 791, 794 (8th Cir.1981). Disputes between a railroad and one of its employees concerning the terms of the collective bargaining agreement are within the exclusive jurisdiction of National Railroad Adjustment Board. 45 U.S.C. § 153 First (i); *Raus v. Brotherhood of Railway Carmen of the United States and Canada, supra,* at p. 794.

MoPac initially moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction. Plaintiff then amended his complaint, as noted above, to add an allegation of collusion between MoPac and IBFO officials. MoPac answered the amended complaint but maintained its position that the Court lacks subject matter jurisdiction.

■ Suits by railroad employees against their union for a breach of the duty of fair representation do not fall under the explicit provisions of the RLA because they are not "disputes between an employee or group of employees and a carrier or carriers." Such suits may not be brought under the LMRA because the LMRA expressly exempts employers and employees subject to the RLA. 29 U.S.C. § 152(2) and (3); *Raus v. Brotherhood of Railway Carmen of the United States and Canada, supra.* The Eighth Circuit has held, however, that federal court jurisdiction over a suit by a railroad employee against his union for breach of the duty of fair representation is granted under 28 U.S.C. § 1337. *Raus v. Brotherhood of Railway Carmen of the United States and Canada, supra,* at p. 796.

■ Subject matter jurisdiction over a defendant railroad is more restricted. The most critical factor in determining whether the Court has jurisdiction over a railroad is whether the suit is essentially a suit between "some employees on the one hand and the Union and management *together* on the other." *Raus v. Brotherhood of Railway Carmen of the United States and Canada, supra,* at pp. 797–98, citing *Glover v. St. Louis-San Francisco Railway,* 393 U.S. 324, 329, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969). The Eighth Circuit has held that only where there are "good faith allegations and facts supporting those allegations indicating collusion or otherwise tying the railroad and the union together in allegedly arbitrary, discriminatory or bad faith conduct amount to a breach of the duty of fair representation" does the district court have jurisdiction over the railroad on the contract violation claim. *Raus v. Brotherhood of Railway Carmen of the United States and Canada, supra,* at p. 798.

■ In his amended complaint plaintiff conclusively asserts that "the collusion of the 'company' and 'union' in preventing plaintiff from pursuing his contractual remedies was a further breach of the bargaining agreement." There are no factual allegations to support this conclusion. In fact, plaintiff himself seemed to contravene the allegation of collusion when he testified in his deposition, the relevant portions of which were attached to the motion for summary judgment, that the only basis for his allegation of collusion is that he felt the Union did not represent him as it should have. The Court finds that it therefore lacks subject matter jurisdiction of plaintiff's claim against the MoPac under the principles set forth in *Raus v. Brotherhood of Railway Carmen of the United States and Canada, supra,* at pp. 798–99.

■ The Court further finds that the complaint must be dismissed due to the fact, as contended by IBFO in its motion, that the complaint was not timely filed. The timeliness of the filing of fair representation suits must be determined, as a matter of federal law, by reference to the appropriate state statute of limitations, in that Congress has not enacted such a statute of limitations governing these types of suits. *United Parcel Service, Inc., v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981); *International Union, UAW, v. Hoosier Cardinal Corporation,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966).

■ Prior to the U.S. Supreme Court decision in *United Parcel Service v. Mitchell, supra,* the rule in the Eighth Circuit was

that the proper state statute of limitations to apply to actions brought against an employer for breach of a collective bargaining agreement and against a union for breach of the duty of fair representation was the statute of limitations for actions on a written contract. *Butler v. Local Union 823, International Brotherhood of Teamsters,* 514 F.2d 442, 447 (8th Cir.1975). This rule was changed, however, in *United Parcel Service, Inc., v. Mitchell, supra,* which held that federal courts must apply the state statute for vacating arbitration awards to determine the timeliness of actions such as the present suit. The application of such statutes, which generally require that actions be commenced within a shorter period of time than the statute of limitations for actions on a written contract, serves "one of the leading federal policies . . . [of] 'relatively rapid disposition of labor disputes.'" *United Parcel Service, Inc., v. Mitchell, supra,* 451 U.S. at p. 63, 101 S.Ct. at 1564. See, also, *Lincoln v. District 9 of the International Ass'n of Machinists & Aerospace Workers,* 539 F.Supp. 1346 (E.D.Mo.1982); *Stahlman v. Kroger Company,* 542 F.Supp. 1118 (E.D.Mo.1982); *Wilcoxen v. Kroger Food Stores,* 545 F.Supp. 1019 (E.D.Mo. 1982); *Aarsvold v. Greyhound Lines, Inc.,* 545 F.Supp. 622 (D.Minn.1982).

Arkansas law, which is patterned after the Uniform Arbitration Act, provides that suits to vacate arbitration awards must be commenced within 90 days from receipt of the award by the aggrieved party, i.e., within 90 days from the date the cause of action arose. Ark.Stat.Ann. § 34–522(b) (1981 Supp.). In the instant case plaintiff was discharged on November 13, 1979. The applicable collective bargaining agreement provides that a grievance may be filed by or on behalf of an employee within 60 days from the date of the occurrence on which the grievance is based. Therefore, plaintiff's cause of action against Local 718 for breaching the duty of fair representation by failing to file appropriate grievances arose, at the latest, on January 12, 1980, the last date on which a grievance contesting his discharge could have been filed under the agreement. Thus, to be timely, plaintiff's

suit against Local 718 should have been filed by April 12, 1980 (within 90 days after the cause of action arose). Plaintiff did not actually file his original complaint, however, until March 24, 1982, over 22 months after expiration of the limitations period. The Court thus finds that plaintiff's suit against Local 718 is clearly time barred.

■ The Court further finds that the *Mitchell* limitations rule, which requires the application of the state statute for vacating arbitration awards, is equally applicable in cases such as the present one where there has been no arbitration award rendered against plaintiff. It is irrelevant at what point in the contractual grievance procedure that the union's alleged breach of the duty of fair representation has occurred. The primary focus is on the "final and binding" nature of the decision reached against the aggrieved party. *Ross v. Bethlehem Steel,* 109 LRRM 2791 (D.Md.1981), citing *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). "From the employee's viewpoint a union's refusal to launch the grievance procedure is just as 'final and binding' as a refusal to carry forward a grievance at any point after the grievance has been invoked." *Bigbie v. Local 142, International Brotherhood of Teamsters,* 530 F.Supp. 402, 405 (N.D.Ill.1981). See, also, *Lincoln v. District 9 of the International Ass'n of Machinists & Aerospace Workers, supra,* at p. 1348; *Stahlman v. Kroger, supra,* at p. 1120; *Wilcoxen v. Kroger Food Stores, supra,* at p. 1021.

■ Further, even though plaintiff was discharged in 1979 and his cause of action arose prior to the issuance of the *Mitchell* decision, the Court finds that *Mitchell* should be given retroactive effect to bar suits such as the present action. The *Mitchell* Court itself applied the rule retroactively to bar recovery by the plaintiff in that case. See, also, *Lincoln v. District 9 of the International Ass'n of Machinists & Aerospace Workers, supra,* at p. 1349; *Stahlman v. Kroger, supra,* at p. 1121; *Hudson v. Teamsters Local 957,* 112 LRMM at 2545, and cases cited therein.

Accordingly, since plaintiff did not commence this action until almost two years after the applicable Arkansas statute of limitations had expired, he is foreclosed from litigating his claim against Local 718.

In view of the findings made hereinabove, the Court finds that it is not necessary to rule upon the second issue raised by IBFO in its motion for summary judgment, namely, the contention that plaintiff failed to exhaust his internal union remedies prior to filing suit.

In light of the foregoing, the Court finds that no issues of material fact are remaining and that the defendants are entitled to judgment as a matter of law.