**TRANSPORTATION COMMUNICATIONS INTERNATIONAL UNION and Brotherhood of Maintenance of Way Employees**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION.**

Civ. A. No. 84–13.

Special Court, Regional Rail Reorganization Act.

June 12, 1989.

Donald F. Griffin, Highsaw & Mahoney, Washington, D.C., for Transp. Communications Intern. Union and Broth. of Maintenance of Way Employees.

Jonathan I. Saperstein, Nat. R.R. Passenger Corp., Washington, D.C., for Nat. R.R. Passenger Corp.

Before GASCH, Presiding Judge, and BRYANT and WEINER, Judges.

## MEMORANDUM OPINION AND ORDER

WEINER, Judge.

This dispute arises from the passage of § 1144(a)(1) of the Northeast Rail Service Act ("NRSA"), 45 U.S.C. § 1101 *et seq.* The plaintiffs, Brotherhood of Railway, Airline and Steamship Clerks, now known as Transportation Communications International Union, and Brotherhood of Maintenance of Way Employees have brought this action for a declaratory judgment against the National Railroad Passenger Corporation ("Amtrak") over Amtrak's discontinuing payment of certain benefits under collective bargaining agreements between the parties. Plaintiffs seek declaratory and injunctive relief from this court pursuant to § 1152(a), 45 U.S.C. § 1105(a).[1]

## BACKGROUND

The Regional Rail Reorganization Act of 1973 ("RRR Act") created Conrail and pursuant thereto Conrail took over several bankrupt railroads. Employees of the bankrupt railroads were then made employees of Conrail. The RRR Act also authorized Amtrak to take over certain routes from Conrail in the Northeast Corridor. As a result, many of the employees hired by Conrail were again displaced and went to work for Amtrak. Those employees are the subject of this lawsuit.

Amtrak and the plaintiffs entered into contracts pursuant to 504(f)(3) of the RRR Act[2] to provide the employees who were retransferred from Conrail to Amtrak with the same so called Title V benefits as were provided to those employees who stayed with Conrail. The pertinent portion of these collective bargaining agreements are as follows:

*Agreement Between Brotherhood of Railway and Airline Clerks and Amtrak signed July 27, 1976:*

(a) All employees of AMTRAK (who qualify under Title V of the Regional Rail Reorganization Act of 1973), who are adversely affected by this designated transaction, or as a result thereof (including but not limited to the following results thereof, abandonments, future reductions or diversions in the present flow of traffic, by various trackage right agreements on or involving the line of railroad acquired in this transaction; by job abolishments or displacements at the time of the transaction or in the future due to a displacement by a protected employee transferred from Conrail (or

---

1. 45 U.S.C. § 1105(a) provides for our jurisdiction as follows:

 (a) Notwithstanding any other provision of law, the special court shall have original and exclusive jurisdiction over any civil action—
 (1) for injunctive, declaratory, or other relief relating to the enforcement, operation, execution, or interpretation of any provision of or amendment made by this subtitle, or administrative action taken thereunder to the extent such action is subject to judicial review;

2. 504(f)(3) provides:

An employee of the Corporation [Conrail] who is entitled to protection and who is transferred as a result of an acquisition pursuant to this Act, or as a result of the designation of a replacement operator, shall, upon transfer to the National Railroad Passenger Corporation, an acquiring railroad, or a replacement operator, carry with him his protected status. The National Railroad Passenger Corporation, an acquiring railroad, or a replacement operator, as new employers, shall be responsible for payment of protective benefits and shall be entitled to reimbursement pursuant to section 509 of this title.

from Penn Central subsequent to February 26, 1975)), and all employees (who qualify under Title V) acquired by AMTRAK from ConRail (or Penn Central subsequent to February 26, 1975), shall be accorded the protection and benefits provided by Section 505 of the Regional Rail Reorganization Act of 1973, excluding Sections (d), (e) and (f), which are not applicable. The definitions set forth in Section 501, items 1 through 9 shall be applicable.

*Agreement Between Brotherhood of Maintenance of Way Employees and Amtrak* signed April 21, 1976:

5(b) Employees transferring to Amtrak will carry with them their protected status under Title V of the Act and Amtrak will be responsible, pursuant to Section 504(f)(3) of the Act for the payment of all protective benefits due qualifying employees.

In 1980 the Staggers Rail Act was passed to reform the labor protection provisions provided by Title V. These changes amounted to a reduced rate for the payment of displacement allowances payable to Conrail employees protected under Title V. NRSA, passed in 1981, repealed Title V of the RRR Act and replaced those benefits with the less generous Title VII benefits. The repeal of Title V was precipitated by the rapidly mounting costs of funding the

payment of these benefits.[3] Congress stated its intention in § 1132, 45 U.S.C. § 1101:

(4) the provisions for protection of employees of bankrupt railroads contained in the Regional Rail Reorganization Act of 1973 have resulted in the payment of benefits far in excess of levels anticipated at the time of enactment, have imposed an excessive burden on the Federal taxpayer, and are now an obstacle to the establishment of improved rail service and continued rail employment in the Northeast region of the United States. (5) since holding Conrail liable for employee protection payments would destroy its prospects of becoming a profitable carrier and further injure its employees, an alternative employee protection system must be developed and funded.

NRSA was passed on September 1, 1981. On November 17, 1981, Amtrak gave plaintiffs oral notice and on November 18, 1981 notified them by letter[4] that their Title V benefits would be discontinued.[5] Three years later in December, 1984, plaintiffs filed this suit alleging that Amtrak violated their collective bargaining agreements by discontinuing the Title V payments. Amtrak alleges that the plaintiffs' claim is time-barred as it was filed outside of what Amtrak argues is the applicable statute of limitations. Alternatively, Amtrak argues that their obligations under the collective bargaining agreements are void, as Con-

---

**3.** Conrail's operations were subsidized by the Federal Government pursuant to 45 U.S.C. § 716.

**4.** The letter sent November 18, 1981 to the Unions stated:

Title V of the Regional Rail Reorganization Act passed by Congress in 1973 directed that Conrail (and Amtrak) provide at least the same benefits that employees had before they were transferred from the Penn Central Railroad. While employed at Penn Central, you were a participant in either the Pennsylvania Railroad or the New York Central Supplemental Pension Plan so Amtrak provided the same benefit for you, as required by law, even though other Amtrak employees did not receive that benefit.

Congress now has repealed Title V so that Amtrak no longer is required to maintain such benefits. After being relieved by Congress of the obligation to continue the Plan coupled with the dramatic Congressional cut-

backs in Amtrak's government funding, we simply cannot afford this ongoing cost.

**5.** Amtrak states that it gave notice of the change in benefits as early as August 15, 1981. On that date, Amtrak informed plaintiffs that Title V was repealed by Congress. This statement, however, made no indication as to Amtrak's position regarding the contracts with plaintiffs. The notice sent stated:

On August 13, 1981, the Northeast Rail Service Act of 1981, was signed by President Reagan. This legislation provides, in pertinent part, that effective September 1, 1981:

Title V of the Regional Rail Reorganization Act of 1973 (45 U.S.C. 771, *et seq.*), and the items in the table of contents of such act relating to such Title V, are repealed.

The Act further provides benefits accrued as of September 1, 1981, shall be disbursed provided that the employee has filed a claim for such benefits within 90 days after September 1, 1981.

gress has repealed Title V. Amtrak argues that since those contract provisions were established pursuant to Title V, they are now void.

## THE STATUTE OF LIMITATIONS ISSUE

■ Plaintiffs contend that the statute of limitations applicable to this action is three years. They argue that since neither the RRR Act nor the Railway Labor Act provide a period of limitation, the most applicable state limitations period should be adopted. *See generally Campbell v. Haverhill*, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280 (1895); *Holmberg v. Armbrecht*, 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946). Plaintiffs characterize their cause of action as one which sounds in contract, i.e. they assert that Amtrak has violated its contractual obligation to provide plaintiffs' members with the Title V-styled benefits required by the collective bargaining agreements. Plaintiffs assert that the applicable statute of limitation is D.C.Code Ann. § 12–301(8), the "catchall" three year limitation period in the District of Columbia. Amtrak conversely claims that plaintiffs' cause of action is governed by the six month limitation period judicially recognized as applicable to certain suits brought under the Labor Management Relations Act. *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

We cannot agree with Amtrak. *DelCostello* involved a § 301 fair representation hybrid claim brought by an employee against his employer for breach of a collective bargaining agreement and against his union for breach of its duty of fair representation. *DelCostello* at 165, 103 S.Ct. at 2291. The Court held the six-month statute of limitations applicable in *DelCostello* because of the national interests served by the shorter limitations period, i.e. the federal policy of rapidly resolving labor disputes and preserving union-employer relationships. *DelCostello* at 168–69, 103 S.Ct. at 2292–93.

The Court concluded that there was no close analogy to this mixed cause of action in state law and, therefore, applied the six-month statute of limitations provided by § 10(b) of the National Labor Relations Act. The Court reasoned that since the *DelCostello* contract claim was inextricably interdependent with the fair representation claim, an analogous federal limitations period was required.

These concerns which compelled the Court in *DelCostello* to apply the shorter limitations period simply are not present in this action. Even taking full cognizance of the shifting federal policies which engendered this action, we find this suit to be a straight forward breach of contract action between the union and Amtrak. There are no allegations of unfair labor practices here, merely an undisputed claim that Amtrak has failed to continue its obligations under the collective bargaining agreements. We find *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966) to be the case more on point.

In *Hoosier* the union brought suit for breach of a collective bargaining agreement. The Court applied the Indiana six year statute of limitations for unwritten contracts because of " 'the obvious and close analogy between this ... suit and an ordinary breach of contract case.' " *DelCostello*, 462 U.S. at 163, 103 S.Ct. at 2289, quoting *Hoosier*, 383 U.S. at 702, 86 S.Ct. at 1111. The Court in *Hoosier* also noted that the claim did not involve "those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective bargaining agreement and the private settlement of disputes." *Hoosier* at 702, 86 S.Ct. at 1111.

As we find that this cause of action is more appropriately labeled a simple contract action, the *Hoosier* case controls. Application of the state limitations period will not frustrate any federal policies regarding the implementation of federal labor law.[6] Therefore, applying the D.C.

**6.** The rule articulated by *DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294 was "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and

Code statute of limitations, which the parties have indicted is the most analogous, we find the plaintiffs' claims are timely. We find plaintiffs first received notice of the defendant's discontinuation of the benefits as early as November 17, 1981. This suit was filed on November 13, 1984, clearly within the three years.

## EFFECT OF REPEAL OF TITLE V

■ The plaintiffs claim that the repeal of Title V, by Congress' enactment of NRSA had no effect on their collective bargaining agreements. Amtrak, however, asserts that the repeal of Title V voided Amtrak's obligations under the collective bargaining agreements. Central to the argument is the intent of Congress in repealing Title V and replacing it with the less generous Title VII. As discussed above, the purpose of the repeal was to reduce the taxpayers' burden, since Conrail is federally subsidized. 45 U.S.C. § 1101(4), (5). The question here is whether Amtrak, which also receives substantial subsidies [7] from the federal government, is statutorily analogous to Conrail which clearly was the focus of the repeal of Title V and the institution of Title VII.[8]

Despite the wording of Title VII which mentions only Conrail employees, Amtrak argues that because of the extensive funding it receives from the federal government, Title VII should likewise apply to Amtrak employees. That is, as Congress' intent was to reduce the federal taxpayers' burden, that intent must necessarily include Amtrak. We disagree.

Amtrak entered into *private* agreements with the unions. Although it is not seriously disputed that these agreements were undertaken by Amtrak pursuant to Title V, this does not necessarily mean that the benefits at issue are "statutory" benefits. Title V benefits were available only to those employees displaced from their original bankrupt railroads and who went to work for Conrail pursuant to the RRR Act. Employees who were re-transferred from Conrail to Amtrak were protected not directly by the statute, but by Title V-styled benefits statutorily required to be incorporated into their private collective bargaining agreements with Amtrak.

We find our prior decision in *Railway Labor Executives v. Grand Trunk Western Railroad Co.*, 594 F.Supp. 758 (Special Court, 1984) (hereinafter *GTW*) controls the case, *sub judice*. GTW was a private railroad, i.e. it received no federal subsidies, and like Amtrak ceased paying any Title V-styled benefits it had been paying under its collective bargaining agreements when NRSA was enacted. There we found the repeal did not apply to GTW because there was no indication that Congress intended to relieve carriers other than Conrail from the contractual obligations to their unions. The lack of any replacement provision for employees of other carriers, we found, lent itself to the conclusion that Congress expected that the private agreements incorporating Title V protections would remain effective. *GTW* at 761.

Title VII provided benefits to Conrail employees only and did not specifically provide for any protections for employees of Amtrak. Thus, if this court were to construe the repeal of Title V in the manner suggested by the defendant, the plaintiffs would be left without any protections at all. There is nothing in the legislative history to suggest that this was Congress' intent. As we have stated, "It cannot be inferred from the legislative history or [sic] Title VII, the whole thrust of which was the need to limit the amount *Conrail* was cost-

---

when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law." This court, however, finds that the cause of action here is a simple breach of contract and there is no reason for us to act contrary to the general rule of adopting a state limitations period.

7. Approximately 30% of Amtrak's activities are funded by the federal government. This equals nearly $500–$600 million annually. *Department of Transportation and Related Agencies Appropriations for 1989, Hearings before the House Committee on Appropriations*, 100th Cong., 2d Sess. 790 (1988) (Statement of W. Graham Claytor, Jr., President, Amtrak).

8. 45 U.S.C. § 797, *et seq.* (Title VII)

ing the taxpayers, that Congress intended to replace the contractual protections of employees of private carriers with absolutely no protections at all." *GTW* at 761. The fact that Amtrak receives 30% of its funding from the federal government, coupled with the relatively small amount of Amtrak's Title V obligations, does not, in our view, make Amtrak's situation analogous to Conrail's. We find that unlike Conrail, and like the private carriers in *GTW*, Amtrak's contractual obligation to provide Title V-styled benefits does not conflict with Conrail's statutory obligation in NRSA to provide Title VII benefits. The absence of inconsistent obligations suggests that Congress did not intend to alter the instant collective bargaining contract when it repealed Title V.

The lack of provision for any alternate benefits for employees of other carriers, along with the concern expressed in the legislative history for Conrail's financial situation without reference to the situations of other carriers, leads to the conclusion that the passage of Title VII was not a Congressional abrogation of the private contracts between these parties. The Court's resolution of this question does no more than establish that Title VII did not, as a matter of statutory interpretation, dissolve the plaintiffs' Title V rights. There remains the question of whether the plaintiffs' members retain the right to Title V benefits under the terms of their contracts. This issue is one of contract construction, not of statutory interpretation. Because the plaintiffs' claims concern the interpretation, application or enforcement of the collective bargaining agreements entered into pursuant to Section 508, the claims should be submitted for resolution to the National Railroad Adjustment Board. As we stated in *GTW*, any question of whether, as a matter of contract law, the terms of Title V remain viable portions of the contracts, may be submitted for final and binding arbitration as provided in Section 3, Second, of the Railway Labor Act, 45 U.S.C. § 153, Second. *GTW*, at 761.

## CONCLUSION

In conclusion, we find that the applicable statute of limitations is D.C.Code Ann. § 12–301(8) which provides three years within which the plaintiff may file a claim. Plaintiffs filed this suit within the three year period and are not time-barred. Further, consistent with our holding in *GTW* we find Congress' repeal of Title V did not affect the private collective bargaining agreements between the plaintiffs and Amtrak. The substitution of Title V benefits with new Title VII benefits applied only to Conrail employees. Thus, the defendant must adhere to its obligations as set forth in its contracts with the plaintiffs. We, therefore, remand this action to the National Railroad Adjustment Board for resolution of the remaining issue of contractual interpretation.