**SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 36, AFL–CIO**

v.

**CITY CLEANING COMPANY, INC., Appellant.**

No. 92–1268.

United States Court of Appeals, Third Circuit.

Argued Sept. 17, 1992.

Decided Dec. 28, 1992.

**90**

Michael F. Kraemer (argued), Debbie R. Sandler, White and Williams, Philadelphia, PA, for appellant.

Charles T. Joyce (argued), Spear, Wilderman, Borish, Endy, Browning & Spear, Philadelphia, PA, for appellee.

Before STAPLETON, SCIRICA and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

City Cleaning Company appeals from a summary judgment in favor of Service Employees Union Local 36 in its action to enforce a grievance committee's award under § 301 of the National Labor Management Relations Act. We will affirm.

### I.

City Cleaning provides contract cleaning services to commercial properties throughout the Philadelphia, Pennsylvania metropolitan area. The Union represents employees in the commercial building maintenance industry. For several years, the Union has been a party to a collective bargaining agreement with the Building Maintenance Contractor's Association (the BMCA Agreement). The Building Maintenance Contractor's Association serves as a negotiating agent for several companies including the City Cleaning company.

The Union is also party to a collective bargaining agreement with another management organization—Building Operator's Labor Relations Inc. ("BOLR"). Article 34(a) of the BMCA Agreement permitted City Cleaning to provide services to facilities governed by the provisions of the BOLR Agreement. Specifically, this provision of the BMCA Agreement permitted BMCA companies to perform maintenance work on facilities governed by the BOLR Agreement, or facilities subject to the BOLR Agreement. Such work was expressly conditioned on the employer's adherence to the "terms and conditions of the then current BOLR contract."

City Cleaning began providing maintenance service to the Mellon Independence Center building in Philadelphia. The maintenance work at Mellon had been performed by the ARA Environmental Services Company. ARA was a party to yet another, different agreement with the Union. ARA had agreed to be bound by the terms and conditions of the BOLR Agreement for ARA employees working at Mellon, even though ARA was not an actual party to the BOLR contract. In union par-

lance, this contract was known as a "BOLR Me-too Agreement."

Soon after beginning work at Mellon, City Cleaning informed the Union that City Cleaning was willing to enter into a BMCA type contract for its workers at Mellon. The Union rejected this offer, arguing that since ARA had performed the work at Mellon under the BOLR Contract, the union would only represent employees under a BOLR-type agreement.

When the Union learned that City Cleaning had begun paying its employees at Mellon less than they had been paid under the ARA "BOLR Me-too" Agreement, it filed a grievance, contending that this was a violation of Article 34(a) of the BMCA Agreement. A month later, City Cleaning filed an unfair labor practice charge with the National Labor Relations Board, charging the Union with violating Section 7 of the National Labor Relations Act (NLRA), which provides:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a)(3).

29 U.S.C. § 157 (1990).

Before the NLRB decided these charges, the grievance committee issued its Report and Decision. The committee unanimously ruled in favor of the Union and directed City Cleaning to pay BOLR scale to its employees at Mellon. City Cleaning did not challenge the grievance committee's award, but simply refused to comply with it. Soon afterward, the NLRB issued a complaint against the Union and a notice of hearing on City Cleaning's unfair labor practice charges. This dispute was eventually settled and approved by the NLRB.

The Union filed an action under Section 301(a) of the Labor Management Relations Act in federal district court seeking a "judgment as a matter of law, and judicial enforcement of the Grievance Committee's Decision and Award." Both the Union and City Cleaning filed motions for summary judgment. The district court then granted the Union's motion and entered judgment in its favor.

## II.

The district court had jurisdiction under § 301 of the Federal Labor Management Relations Act of 1947 (LMRA); 28 U.S.C. § 185(a), 28 U.S.C. § 1331 and § 1337. We have jurisdiction under 28 U.S.C. § 1291. Although we exercise plenary review of the summary judgment, *Carter v. Rafferty*, 826 F.2d 1299 (3d Cir.1987), we recognize that courts play an extremely limited role in resolving labor disagreements. *United Paperworkers Intern. Union, AFL–CIO, v. Misco*, 484 U.S. 29, 36, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987); *News America Publications Inc. v. Newark Typographical Union*, 918 F.2d 21, 24 (3d Cir.1990).

## III.

City Cleaning challenges the district court's grant of summary judgment in favor of the Union on three grounds. First, it claims that the grievance committee award violates public policy. Second, it contends that the unfair labor practice settlement renders the grievance committee's report unenforceable. Finally, it argues that the district court erred by not applying a six month limitation to the Union's action to enforce the grievance committee's award.

## A.

■ City Cleaning's primary argument is that the arbitration award is unenforceable because it runs counter to the well-established public policy that employees should not be subject to working conditions negotiated by a union which they have not selected. The union counters by arguing that

the BMCA Contract is valid when viewed as a "union standards" clause.

■ Specifically, the company contends that the grievance committee's ruling violated public policy because the award "imposed upon its employees terms and conditions of employment bargained for by a union which does not represent them." When reviewing an arbitration award, our standard is extremely deferential to the arbitrator's decision. A decision rendered by a joint labor-management grievance committee, such as here, is entitled to the same deference due the decision of an arbitrator, *Eichleay Corp. v. International Assn. of Bridge, Structural and Ornamental Iron Workers*, 944 F.2d 1047, 1056 n. 7 (3d Cir.1991) citing *Griesmann v. Chemical Leaman Tank Lines Inc.*, 776 F.2d 66, 74 (3d Cir.1985). There is no dispute here that the grievance committee's award "draws its essence" from the BMCA Agreement. *See Roberts and Schaefer Co. v. Local 1846, United Mineworkers of America*, 812 F.2d 883, 885 (3d Cir.1987). The interpretation of Article 34(a) is the core of the grievance. The district court could only have overturned the grievance committee's award if, as City Cleaning argues, the award violated public policy.

City Cleaning cites *United Paperworkers v. Misco*, supra, in support of its contention that federal courts have the power and the obligation to refuse to enforce labor arbitration decisions that violate public policy. In *Misco*, the Court stated:

> ... a court's refusal to enforce an arbitrator's interpretation of such contracts is limited to situations when the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest.

484 U.S. at 43, 108 S.Ct. at 373. The Court further instructed that "the violation of such a policy must be clearly shown if an award is not to be enforced." *Id.* at 43, 108 S.Ct. at 373–374.

■ The public policy exception as set forth in *Misco* is slim indeed. In *Misco*, the Supreme Court made clear that its decision did not announce an expansive interpretation of the public policy exception. The Court, in reviewing the *W.R. Grace* decision, announced that: "[*W.R. Grace*] does not ... sanction a broad judicial power to set aside arbitration awards as against public policy." *Misco*, 484 U.S. at 43, 108 S.Ct. at 373 quoting *W.R. Grace Co. v. International Rubber Workers Union*, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). This limited exception to the usual deference given an arbitration award is only available when the arbitration decision and award create an explicit conflict with an explicit public policy that is "well defined and dominant and [can be] ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *W.R. Grace Company v. International Rubber Workers Union*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983). See also *Muschany v. United States*, 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945).

"As with any contract, however, a court may not enforce a collective bargaining agreement that is contrary to public policy." *W.R. Grace Co.*, 461 U.S. at 765–66, 103 S.Ct. at 2183. Moreover, as the court said in *Misco*, the public policy must be explicit, well-defined and dominant. *Misco*, 484 U.S. at 43, 108 S.Ct. at 373. We agree with the district court that City Cleaning has failed in its burden of proving that this particular award violates an explicit public policy [1]. The district court determined that "City Cleaning has not shown whether the employment terms vitally affect the unit employees, and it therefore, has not shown an explicit conflict with a public policy." We likewise find in this record no conflict. We will affirm the district court's determination that City Cleaning has failed to meet its burden on the public policy issue.

---

1. City Cleaning erroneously believes that the district court improperly charged the company with the burden of proving how they were affected by the alleged policy violation. The company is the party seeking to avoid complying with the award of the grievance committee, and the district court properly charged them with the burden of proof.

City Cleaning further maintains that Article 34(a) of the BMCA Agreement is an illegal "union signatory" clause and, hence, the grievance committee's report violated federal labor policy by imposing the BOLR/Local 36 agreement terms on employees who have not demonstrated a desire to be represented by the Union. The Union, on the other hand, argues that Article 34(a) of the BMCA Contract can easily be interpreted as a "union standards" clause. *General Truck Drivers Local 957 v. NLRB*, 934 F.2d 732, 736 (6th Cir.1991) citing *NLRB v. Hotel and Restaurant Employees and Bartenders Union Local 531*, 623 F.2d 61, 67 (9th Cir.1980).

The distinction between a "union standards" or "work preservation" clause and a "union signatory" clause has been explained as follows:

> Work preservation clauses are generally characterized by the fact that they define the group of permissible subcontractors in terms of economic standards rather than terms of union affiliation ... [A] union signatory clause focuses on union affiliation by prohibiting an employer from subcontracting work to any employer not signatory to or approved by the union. Union affiliation or approval bears no absolute relationship to the economic condition of a subcontractor, and clauses requiring such affiliation or approval are directed at more than work preservation—they are generally viewed as an effort to expand the union's sphere of impermissible secondary pressure.

*General Truck Drivers Local 57 v. N.L.R.B.*, 934 F.2d 732, 736 (6th Cir.1991) citing *N.L.R.B. v. Hotel and Restaurant Employees and Bartenders Union Local 531*, 623 F.2d 61, 67 (9th Cir.1980).

Here, it is plausible for the arbitration committee to interpret Article 34(a) as a union standards (or "work preservation") clause. The record indicated that the arbitration committee interpreted Article 34(a) as a valid, union standards clause which sought to preserve the Philadelphia area wage and benefit standards afforded to the Union's members. The district court was likewise given ample evidence to support a determination that Article 34(a) was a "union standards" provision. The Union's president testified that "the union is asking that City Cleaning honor the economic standards that we have throughout the City in buildings, similar buildings." Further, the Regional Director of the NLRB expressly recognized that the grievance committee's award "did not have an object of forcing the Employer to recognize the Union." But we need not determine whether Article 34(a) of the BMCA Contract itself is a lawful provision, because City Cleaning has simply not carried its burden of showing an express conflict with labor policy.

■ City Cleaning next argues that the settlement of the unfair labor practice charges filed with the NLRB renders the grievance committee's report and award unenforceable. The district court found City Cleaning had failed to raise this issue in a timely motion to vacate, modify or correct the grievance committee's award. We agree.

In *Service Employees International Union v. Office Center Services Inc.*, we said "if a defendant has important defenses to an arbitration award, he should raise them within the period prescribed for actions to vacate rather than wait to raise them as defenses in a confirmation proceeding." 670 F.2d 404, 412 (3d Cir.1982). Specifically, we held that:

> .... in a Section 301 proceeding to confirm a labor arbitration award, the relevant state statute of limitations is applied, and under the Pennsylvania statute applicable ... the failure to raise objections within three months which could have been raised in a motion to vacate, modify, or correct the awards bars raising them in confirmation proceedings held thereafter.

*Id.* Under Pennsylvania law, a party has thirty days to bring an action to modify, vacate, or correct an arbitrator's award. 42 Pa.C.S.A. § 7314(b). The grievance committee issued its report on June 8, 1990. City Cleaning responded by filing an unfair labor practices charge with the NLRB. It could easily have filed a simultaneous pro-

tective action in the district court, but did not. We agree with the district court that no exceptional circumstances exist which would permit it to relax the rule we announced in *Service Employees v. Office Center Services.*

### B.

■ We find the company's "estoppel" argument to be frivolous. The company argues that it did not file a timely motion to vacate because it relied on the NLRB's decision to issue a complaint against the union on the unfair labor practice charge. This makes no sense whatsoever. The NLRB's report was not released until July 31, 1990. The last day for filing a corrective motion and/or objections to the grievance committee's award was July 8, 1990. The district court correctly concluded that the company was precluded from raising those issues as affirmative defenses.

### C.

■ Finally, City Cleaning contends that the Union's action to confirm the grievance committee's award is time barred. The union filed its "pure" [2] section 301 action nine months after the grievance committee's award. Specifically, City Cleaning urges us to hold the six month limitation provided in Section 10(b) of the NLRA, 29 U.S.C. § 160(b) applicable to Section 301 confirmation actions. We will not.

Section 301 of the LMRA established a "federal forum to resolve suits for violation of contracts between an employer and a labor organization. *International Union of Elevator Constructors v. Home Elevator Company,* 798 F.2d 222, 225 (7th Cir. 1986). Unfortunately, the LMRA does not set forth a limitation for section 301 actions to confirm. Federal statutes commonly provide a cause of action but omit a specific limitation, and from time-to-time we find it necessary to "fill the gap," generally by applying the most closely analogous state

statute of limitations. *Reed v. United Transportation Union,* 488 U.S. 319, 323–24, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989) citing *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 157–58, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476. We note, however, that "State legislatures do not devise their limitations periods with national interests in mind." *Occidental Life Ins. Co. of California v. EEOC,* 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977). It is, therefore, our duty "to assure that the importation of state law will not frustrate or interfere with the implementation of national policies." *Id.*

City Cleaning urges us to follow the rationale of *United Mineworkers District 4 v. Cyprus Emerald Resources Corporation,* 681 F.Supp. 271 (W.D.Pa.1988). In *Cyprus Emerald,* the district court determined that because Pennsylvania had eliminated its specific limitation for actions to enforce arbitration awards, there was no analogous provision, and the six month limitation in section 10(b) of the NLRA was applicable to section 301 "pure" confirmation actions. We reject this reasoning.

It is undisputed that the six months limitation provided in section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), applies to "hybrid" section 301 actions. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Taylor v. Ford Motor Company,* 761 F.2d 931, 933 (3d Cir.1985). But, courts are split on the time limitation for "pure" section 301 actions. The Court of Appeals for the Eleventh Circuit held that the six month limitation provided in section 10(b) of the NLRA is applicable to "pure" section 301 actions. See *Samples v. Ryder Truck Lines Inc.* 755 F.2d 881 (11th Cir.1985). Other courts have determined that a state-law limitations period for confirming arbitration awards is applicable. *Local 10, American Communications Association*

---

**2.** A "pure" section 301 action involves a union suing an employer for breach of a collective bargaining agreement. *International Ass'n of Machinists v. Allied Products Corporation,* 786 F.2d 1561, 1563 (11th Cir.1986). A "hybrid" section 301 action involves a union member suing the employer for breach of the collective bargaining agreement, *and* his or her union for breaching its duty of fair representation. *Id.*

*v. RCA Global Communications,* 124 LRRM 2349, 106 Lab.Cas. 12,355, 1986 WL 10276 (S.D.N.Y.1986). The state-law statute of limitations period for contract actions has also been held applicable to confirmation actions. *Hotel Employees Local 54 v. Ramada, Inc.,* 624 F.Supp. 1121 (D.N.J.1986).

The Supreme Court established a six month limitation period for "hybrid" section 301 actions in *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). In so doing, however, the Supreme Court expressly cautioned that:

> We stress that our holding today should not be taken as a departure from prior practice of borrowing limitations periods for federal causes of action, in labor law or elsewhere. We do not mean to suggest that federal courts should eschew use of state limitations periods anytime state law fails to provide a perfect analogy.

*DelCostello,* 462 U.S. at 171, 103 S.Ct. at 2294.

We believe the *DelCostello* six month limitation does not apply to section 301 actions brought by unions to enforce arbitration awards against employers. *Taylor v. Ford Motor Company,* 761 F.2d 931, 933 n. 2 (3d Cir., 1985) citing *Derwin v. General Dynamics Corporation,* 719 F.2d 484 (1st Cir., 1982); *I.U.E. v. Ingram Mfg. Co.,* 715 F.2d 886 (5th Cir.1983) cert. denied, 466 U.S. 928, 104 S.Ct. 1711, 80 L.Ed.2d 184 (1984). This action differs from that in *DelCostello,* because the Union seeks to enforce an award entered against City Cleaning. There are no claims, as there were in *DelCostello,* by an employee against the Union for breach of the duty of fair representation.

In searching for the applicable limitations, we are bound by the Supreme Court's instructions in *Hoosier Cardinal:*

> ... since no federal provision governs, we hold that the timeliness of a § 301 suit, such as the present one, is to be determined by reference to the appropriate state statute of limitations.

383 U.S. 696, 704–05, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966). Because § 301 does not contain an express limitation of actions, we will turn to analogous state statutes.

■ Initially, both parties recognize that the Union's action is to enforce an arbitration award, which is analogous to a breach of contract action. As the Supreme Court stated in *Hoosier Cardinal:*

> The present suit is essentially an action for damages caused by an alleged breach of an employer's obligation embodied in a collective bargaining agreement. Such an action closely resembles an action for breach of contract cognizable at common law.

*Id.* 383 U.S. at 706, 86 S.Ct. at 1113 n. 7.

There are two Pennsylvania provisions applicable to actions to enforce an arbitration award under § 301 of the NLRA. 42 Pa.C.S.A. § 5527(2) provides that "(2) an action upon a contract, ... or other instrument in writing ..." must be commenced within six years. It is axiomatic that a collective bargaining agreement is a contract between the union and the employer, and a failure to comply with the agreement should be treated as a breach of contract. We hold that the Pennsylvania six year limitation for actions on a contract applies to a pure section 301 action to enforce an arbitrator's award under a collective bargaining agreement. See *Falsetti v. Local Union No. 2026, United Mineworkers of America,* 355 F.2d 658, 662 (3d Cir.1966) (six year limitation applicable to an employee action under the LMRA for an alleged violation of his seniority rights and breach of the union's duty of fair representation).

Pennsylvania also has a residual provision that applies a six year limitation to "any civil action or proceeding which is [not] subject to another limitation specified in this subchapter." 42 Pa.C.S.A. § 5527(6). We find this provision significant because it encompasses any cause of action—either federal or state—for which a limitation has not been expressly created by the legislature or Congress. The district court did not specifically determine which particular Pennsylvania statutory provision should apply to this action, but did recognize that 42 Pa.C.S.A. § 5527 applies. We agree, and since the six year

period has not run, the union's action to enforce the arbitration award was timely.

### IV.

In conclusion, we find the issues raised by the company to be without merit and will affirm the district court's order of December 2, 1991.