**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-3059

_____

CHRISTOPHER N. CAPUTO,

Appellant

v.

WELLS FARGO ADVISORS, LLC

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3:19-cv-17204)
Honorable Freda L. Wolfson, Chief District Judge

_____

Argued: November 17, 2021

Before: CHAGARES, *Chief Judge*, BIBAS and FUENTES, *Circuit Judges*

(Opinion filed:  May 9, 2022)

_____

Timothy W. Bergin                    [ARGUED]
Potomac Law Group
1300 Pennsylvania Ave., N.W.
Suite 700
Washington, D.C. 20004

Mark A. Kriegel
1479 Pennington Road
Ewing, NJ 08618
        *Counsel for Appellant*

Megan M. Christensen
Yio Kyung Lee
Jonathan A. Scobie          [ARGUED]
Stevens & Lee
Princeton Pike Corporate Center
100 Lenox Drive
Suite 200
Lawrenceville, NJ 08648
     *Counsel for Appellee*

_____

OPINION[*]

_____

FUENTES, *Circuit Judge*.

Petitioner-Appellant Christopher N. Caputo appeals the District Court's order denying his motion to vacate an arbitration award issued in favor of Respondent-Appellee Wells Fargo Advisors, LLC ("Wells Fargo") and granting Wells Fargo's cross-motion to confirm the award. Caputo argues that the award should be vacated because it violates public policy and is in manifest disregard of law. He also argues that it should be vacated because the arbitration panel exceeded its authority and excluded certain evidence. For the following reasons, we will affirm the District Court's order.

I.

Wells Fargo hired Caputo as a financial advisor in February 2011. Under the terms of his employment offer, Caputo became eligible for certain bonuses and awards upon meeting particular performance-based benchmarks. Specifically, Caputo qualified to receive a Transitional Bonus of $1,202,294, paid in monthly installments of $12,833

_____

[*] This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not constitute binding precedent.

from 2011 to 2021. He also qualified to receive three separate Production Bonuses of $240,459, as well as a Best Practice Award of $240,459, which were to be paid in monthly installments over approximately ten years.

Caputo could choose to get cash for his bonuses and awards upfront in the form of a loan. So from 2011 to 2014, Wells Fargo and Caputo executed five Promissory Notes, each for a principal sum of each bonus and award amount—one for $1,202,294 and four for $240,459—totaling over two million dollars. In other words, rather than waiting to receive the bonuses and awards in monthly installments over ten years, Caputo elected to receive them in an upfront lump sum.

Each of the Promissory Notes set forth a schedule of debt obligations under which Caputo was "unconditionally" obligated to pay Wells Fargo back in full.[1] Critically, Caputo's decision to execute the Promissory Notes did not alter Wells Fargo's payment of the bonuses or awards. Rather, while Wells Fargo employed Caputo, it still paid him his bonuses and awards in monthly installments, which in turn offset Caputo's debt obligations under the Promissory Notes. Most importantly, under the Promissory Notes, if Caputo were ever terminated, Wells Fargo was entitled to "declare the entire unpaid principal balance of [each] Note immediately due and payable."[2]

Wells Fargo terminated Caputo's employment in December 2014 after conducting an internal investigation and determining that he had engaged in inappropriate practices. Wells Fargo found that Caputo had traded certain clients' long-term investments for other

---

[1] *See, e.g.*, App. 199.
[2] *See, e.g.*, *id.*

3

long-term investments to the clients' detriment, resulting in multiple violations of company policy. At the time of his termination, Caputo had repaid Wells Fargo around $300,000 through his monthly bonus and award installments. Wells Fargo sent Caputo a notice of demand for the outstanding amount due under the Promissory Notes (about $1.7 million) and advised Caputo that it had placed an administrative hold on his Wells Fargo brokerage accounts. When Caputo failed to pay, Wells Fargo commenced a Financial Industry Regulatory Authority ("FINRA") arbitration, asserting claims for breach of contract against Caputo. Caputo asserted multiple counterclaims, including for breach of contract, unconscionability based on fraudulent inducement, unjust enrichment, breach of implied duty of good faith and fair dealing, defamation, fraudulent inducement to accept employment, expungement, and breach of New Jersey employment law.

In July 2019, after multiple days of hearings, the FINRA arbitration panel issued an award in favor of Wells Fargo, concluding that Caputo was liable to Wells Fargo for the entire balance owed under the Promissory Notes. The arbitration panel also denied Caputo's counterclaims in their entirety. Caputo then moved to vacate the arbitration award in the U.S. District Court for the District of New Jersey. Wells Fargo opposed the motion and filed a cross-motion to confirm the award. In May 2020, the District Court denied Caputo's motion and granted Wells Fargo's. Caputo then filed a motion for

4

reconsideration, which the District Court denied in September 2020. Caputo filed a timely notice of appeal.[3]

II.[4]

The District Court had jurisdiction under 9 U.S.C. §§ 9 and 10 and 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291 and 9 U.S.C. § 16(a).[5] "When reviewing a district court's denial of a motion to vacate an arbitration award, we review its legal conclusions de novo and its factual findings for clear error."[6] "[T]he correlative grant of a motion to confirm" an arbitration award is also reviewed de novo.[7] Given the

---

[3] Caputo simultaneously moved for a stay of the District Court's judgment before the District Court, which the District Court denied. He then filed the same motion before this Court, which we also denied on October 29, 2020. That same day, Caputo filed for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the District of New Jersey ("Bankruptcy Court"). The Bankruptcy Court ultimately discharged Caputo's debts, including the approximately $1.7 million he owed to Wells Fargo under the District Court judgment, and ordered the bankruptcy case closed.

[4] Wells Fargo asserts that the instant appeal is moot given that Caputo's debt to Wells Fargo pursuant to the District Court's judgment was discharged in bankruptcy. We disagree. Assuming that Caputo could prevail in this appeal, we could fashion "meaningful relief." *See In re Surrick*, 338 F.3d 224, 230 (3d Cir. 2003) (internal quotation marks omitted). A reversal of the District Court's decision and (eventual) vacatur of the arbitration award could result in Caputo receiving the money from his Wells Fargo brokerage accounts, which were placed on administrative hold after Caputo failed to pay Wells Fargo the amount he owed under the Promissory Notes. Thus, Caputo's appeal is not moot.

[5] *Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E.*, 817 F.3d 857, 861 (3d Cir. 2016).

[6] *Whitehead v. Pullman Grp., LLC*, 811 F.3d 116, 119 n.23 (3d Cir. 2016) (citing *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012), *aff'd*, 569 U.S. 564 (2013)).

[7] *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 941, 949 (1995).

"strong federal policy in favor of commercial arbitration, we begin with the presumption that the award is enforceable."[8]

Under the Federal Arbitration Act ("FAA"), four narrow grounds exist for vacating an arbitration award.[9] Even so, "a reviewing court will decline to sustain an award 'only in the rarest case.'"[10] Caputo challenges the award on two vacatur grounds not enumerated in the FAA: (1) that the arbitration award violated public policy, and (2) that the award was in manifest disregard of law.[11] He also challenges the award on two of the four grounds enumerated in the FAA: (1) that the arbitration panel exceeded its authority under § 10(a)(4), and (2) that the panel excluded pertinent and material evidence under § 10(a)(3).[12] We address each vacatur ground in turn.[13]

---

[8] *Sutter*, 675 F.3d at 219 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).
[9] 9 U.S.C. § 10(a).
[10] *Newark Morning Ledger Co. v. Newark Typographical Union Loc. 103*, 797 F.2d 162, 165 (3d Cir. 1986) (internal citation omitted).
[11] As the District Court correctly noted, we have recognized these grounds as additional bases for vacatur. *See, e.g.*, *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003) (manifest disregard); *Serv. Emps. Int'l Union Loc. 36 v. City Cleaning Co.*, 982 F.2d 89, 92 (3d Cir. 1992) (public policy). That said, we have not yet weighed in on whether these grounds for vacatur survive the Supreme Court's decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008). Like the District Court, we will presume, for the purposes of this appeal, that these grounds "continue to exist as a basis for vacatur after *Hall Street*." App. 10.
[12] *See* 9 U.S.C. § 10(a)(3)–(4).
[13] We will address Caputo's arguments regarding manifest disregard of law and § 10(a)(4) together, as the basis for both is that the arbitration panel ignored state labor laws.

6

III.

A.

First, Caputo argues that the arbitration award should be vacated for violating

dominant public policy because (1) it enforced contract provisions prohibited by state

labor statutes and designed to evade taxes; and (2) Caputo was discharged without just

cause. We disagree.

An arbitration award may be vacated when enforcing it violates explicit public

policy.[14] However, "the public policy must be well defined and dominant, and is to be

ascertained by reference to the laws and legal precedents and not from general

considerations of supposed public interests."[15] We must use "common sense" to

determine "whether a public policy exists[,] . . . keeping in mind that a formulation of

public policy based only on general considerations of supposed public interests is not the

sort that permits [us] to set aside an arbitration award."[16] We have characterized this

exception as "slim."[17] Indeed, it "is available only when the arbitration decision and

award create an *explicit* conflict with an *explicit* public policy."[18]

Caputo asserts that enforcing the contractual provisions at issue would violate

state labor laws, and that "[a]n express statutory override of particular types of

---

[14] *W.R. Grace & Co. v. Loc. Union 759*, 461 U.S. 757, 766 (1983); *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 42–43 (1987).
[15] *United Transp. Union Loc. 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 381 (3d Cir. 1995) (internal citation and quotation marks omitted).
[16] *Id.* at 381–82 (internal citation and quotation marks omitted).
[17] *Id.* at 382 (internal citation and quotation marks omitted).
[18] *Id.* (emphasis added) (internal citation and quotation marks omitted).

contractual provisions . . . is by definition an expression of dominant public policy."[19]

And, he adds, the Promissory Notes run afoul of "law[s] condemning tax evasion," so they are unenforceable for that reason too.[20] The case law that Caputo cites in support of these propositions is inapposite.[21] In fact, these arguments improperly conflate the manifest disregard and public policy doctrines.[22] Even if these laws articulated some public policy, it would not be "well defined [or] dominant."[23] Caputo identifies no other explicit *public policy* that the arbitration award violates.

Caputo also argues that the arbitration award is contrary to public policy because he was terminated without cause. Yet besides "general considerations of supposed public interests," Caputo does not explain how being fired without cause violates public policy. And it is hard to see how that could be true here, given that Caputo's employment was at-will.

---

[19] Caputo Opening Br. at 14.

[20] *Id.* at 26.

[21] Along with the case law cited in his briefing, Caputo submitted several Rule 28(j) letters containing mostly out-of-circuit case law purporting to support his public policy arguments. Rule 28(j) Letter (filed March 13, 2022); Rule 28(j) Letter (filed Dec. 1, 2021). These cases are distinguishable and do not persuade us that the arbitration award issued in favor of Wells Fargo (or the contract provisions at issue in *this* case) violates public policy.

[22] *Cf. Seneca Nation of Indians v. New York*, 988 F.3d 618, 628 (2d Cir. 2021) (stating in dicta that "a court could certainly vacate an arbitration award that interpreted an agreement to require something expressly prohibited by law or statute, insofar as that would show that the arbitrators willfully flouted the governing law by refusing to apply it" or, in other words, manifestly disregarded the law (internal citation and quotation marks omitted)).

[23] *United Transp. Union Loc. 1589*, 51 F.3d at 381.

B.

Second, Caputo argues that the arbitration award should be vacated for being in manifest disregard of law for ignoring state labor statutes. This argument also fails. "The manifest disregard standard requires more than legal error."[24] "Rather, the arbitrators' decision must fly in the face of clearly established legal precedent, such as where an arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it."[25] It is an "extremely deferential" standard.[26]

Caputo also argues that the award should be vacated for exceeding the arbitrator's authority under § 10(a)(4) on the same basis. Caputo asserts that Wells Fargo invited the arbitration panel to disregard the law and that they did so, as evidenced by the panel restricting Caputo's cross-examination of certain witnesses and granting an arbitration award in favor of Wells Fargo. As the District Court recognized, "[u]nder § 10(a)(4) of the FAA, a court cannot examine the merits of an arbitrator's decision, correct factual or legal errors, or overrule an award based on a mere disagreement with the arbitrator's interpretation of a contract."[27] Simply put, "we must enforce an arbitration award if it is based on an arguable interpretation of" the contract.[28] The terms of an award may not be revised "unless they are completely irrational."[29] As we have explained, "[s]o deferential

---

[24] *Whitehead*, 811 F.3d at 121.
[25] *Id.* (internal citations and quotation marks omitted).
[26] *Id.* (internal citation and quotation marks omitted).
[27] App. 15 (internal citations omitted).
[28] *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1291 (3d Cir. 1996).
[29] *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*, 618 F.3d 277, 295 (3d Cir. 2010) (internal citation and quotation marks omitted).

9

is the 'irrationality' standard under the FAA that we 'may not overrule an arbitrator simply because [we] disagree . . . . [T]here must be absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of an award.'"[30]

Even if the FINRA arbitration panel got it wrong, it is hard to see how this would be more than legal error, as required to vacate an arbitration award under the manifest disregard doctrine. Further, despite Caputo's assertions to the contrary, there is no evidence in the record that Wells Fargo urged the FINRA arbitration panel to disregard the law. The arbitrators' decisions to cut off the cross-examination of certain witnesses and rule in favor of Wells Fargo do not support the inference that the FINRA arbitration panel disregarded the law such that they exceeded their authority. Unlike the Supreme Court's decision in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, which Caputo cites in support of his arguments, the FINRA arbitration panel did not impose its own "policy choice" in making its decision.[31] Instead, the arbitral panel "rationally derived" the arbitration award in favor of Wells Fargo "from the agreement between the parties."[32]

C.

Lastly, Caputo asserts that the arbitration award should be vacated because the arbitrators excluded evidence showing that Wells Fargo discharged him without just

---

[30] *Id.* at 295–96 (quoting *United Transp. Union Loc. 1589*, 51 F.3d at 379); *see also Sutter*, 675 F.3d at 220 ("In other words, the task of an arbitrator is to interpret and enforce a contract. When he makes a good faith attempt to do so, even serious errors of law or fact will not subject his award to vacatur." (citation omitted)).
[31] 559 U.S. 662, 677 (2010).
[32] *Ario*, 618 F.3d at 295.

cause. We are not persuaded. The FAA permits district courts to vacate arbitration awards "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy."[33] But we have cautioned that § 10(a)(3) "cannot be read . . . to intend that every failure to receive relevant evidence constitutes misconduct which will require the [vacatur] of an arbitrator's award."[34] Vacatur under § 10(a)(3) is "warranted only where the arbitrator's refusal to hear proffered testimony so affects the rights of a party that it may be said that he was deprived of a fair hearing."[35] Like the manifest disregard of law standard, this is an "extremely deferential standard" and typically results in confirmation of an arbitration award.[36]

We are not convinced that the arbitrators' decision to exclude evidence of Caputo's discharge deprived him of a fair hearing. Given that Caputo was an at-will employee who signed Promissory Notes promising that he would pay Wells Fargo back in full, we are skeptical that excluding the evidence at issue resulted in an unfair hearing.

## IV.

For these reasons, we will affirm the District Court's order denying Caputo's motion to vacate the arbitration award and granting Wells Fargo's motion to confirm the arbitration award.

---

[33] 9 U.S.C. § 10(a)(3).
[34] *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, Subscribing to Retrocessional Agreement Nos. 950548, 950549 & 950646*, 584 F.3d 513, 557 (3d Cir. 2009) (internal citation and quotation marks omitted).
[35] *Id.* (internal citations and quotation marks omitted).
[36] *Id.* (internal citation and quotation marks omitted).