SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL UNION NO. 33 OF NORTHERN OHIO NO. 70, Plaintiff–Appellee,

v.

POWER CITY PLUMBING & HEATING, INC., Defendant–Appellant.

No. 90–1753.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 7, 1991.

Decided June 4, 1991.

558

Geary M. Battistelli, Beneke, Battistelli & Bermer, Wheeling, W. Va., for defendant-appellant.

Joseph John Allotta, Allotta and Farley Co., L.P.A., Toledo, Ohio, for plaintiff-appellee.

Before SPROUSE, Circuit Judge, CHAPMAN, Senior Circuit Judge, and COPENHAVER, United States District Judge for the Southern District of West Virginia, sitting by designation.

SPROUSE, Circuit Judge:

In this appeal we consider the district court's decision that the United States Arbitration Act's ("USAA")[1] three-month statute of limitations should be applied to a motion to vacate an arbitration award in a labor dispute context. The plaintiff, Sheet Metal Workers International Association Union Local 33 ("Union"), brought suit against Power City Plumbing & Heating, Inc. ("Power City") to enforce an arbitration award pursuant to § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a). Power City moved to vacate the arbitration award; but the district court dismissed the motion as untimely, applying the three-month limitations period found in § 12 of the USAA, 9 U.S.C. § 12. The district court, finding no genuine issue of material fact, granted summary judgment in favor of the Union on its § 301 action to enforce the arbitration award. Power City appeals. We affirm.

I

The Union is the successor to Local 70 of the Sheet Metal Workers International Association, which had entered into a collective bargaining agreement with the Wheeling Area Sheet Metal & Roofing Contractors' Association. The agreement was effective July 4, 1985 through July 4, 1990. Power City was a member of the contractors' association at the time the agreement was signed. Subsequent to the execution of the collective bargaining agreement, Power City withdrew as a member of the

1. United States Arbitration Act, 9 U.S.C. §§ 1 et seq.

contractors' association and notified the various unions that it would no longer be bound by contracts negotiated by the contractors' association, including the collective bargaining agreement.

The collective bargaining agreement includes, *inter alia*, provisions for wages and travel expenses. It also sets forth grievance procedures for the resolution of disputes. It provides that the employer and the union must first attempt to settle any dispute directly. If this is unsuccessful, either party may bring the dispute before the Local Joint Adjustment Board in the geographic area where the work is being performed and then to a review panel. Finally, either party may appeal that decision to the National Joint Adjustment Board (NJAB).[2]

In 1988, a dispute arose between the Union and Power City concerning wage scales and travel expense reimbursement rates. The Union brought a grievance before the Local Joint Adjustment Board which eventually was referred to the NJAB for final decision. Throughout the grievance proceedings, Power City refused to appear at the hearings, contending that it was not subject to the grievance requirements of the contract as it had withdrawn from the contractors' association.

Following a hearing, the NJAB rendered a decision on July 5, 1988, finding that Power City had failed to pay $18,500 in wages and expenses due under the prevailing scales to three union employees. On November 21, 1988, the Union filed a § 301 action for enforcement of the arbitration award in the United States District Court for the Northern District of Ohio, Eastern Division.[3] Power City filed its answer which included a motion to vacate the arbitration award and transfer venue. The Union moved for summary judgment and for confirmation and enforcement of the arbitration award. Subsequently, the action was transferred to the United States District Court for the Northern District of West Virginia.

Thereafter, the district court dismissed Power City's motion to vacate the arbitration award on the sole basis that it was time-barred, applying the three-month statute of limitations found in § 12 of the USAA. It also granted the Union's motion for summary judgment on the ground that the arbitration award "draws its essence from the collective bargaining agreement" and "was not procured by fraud and is not against public policy."

## II

Power City raises two issues on appeal: first, that the district court erred in applying the three-month statute of limitations— (had the court applied the six-month limitations period from § 10(b) of the LMRA, Power City's motion to vacate would have been timely); and second, that the district court erred in granting summary judgment to the Union.

As the district court recognized, there is no statute of limitations period provided in § 301 of the LMRA. Nor is there a West Virginia limitations period controlling actions to vacate arbitration awards. *See* West Virginia Code, §§ 55–10–1, *et seq.* Power City argues that under these circumstances we should choose the limitations period provided in § 10(b) of the NLRA, 29 U.S.C. § 160(b), as did the Supreme Court in *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 158–62, 103 S.Ct. 2281, 2287–89, 76 L.Ed.2d 476 (1983). We disagree.

Circuit courts have differed in their resolution of this issue when facing a calculus

---

**2.** Sections 10.1–10.4 of the collective bargaining agreement provide that all the decision-making bodies involved in the arbitration and appeal process consist of equal numbers of union and contractors' association members. The agreement does not specify how many persons will make up a Local Joint Adjustment Board or the National Joint Adjustment Board. The intermediate appeal to a review panel consists of one union representative and one contractors' association representative.

**3.** The procedural rules of the NJAB provide that "[i]n the event of noncompliance within thirty (30) calendar days following the mailing of a decision" an enforcement action may be initiated. *See* § 10.6 of the collective bargaining agreement.

which included limitations statutes governing vacation of arbitration awards provided by both state law and federal law. The Sixth and Eleventh Circuits "borrowed" the three-month limitations period from § 12 of the USAA for application to § 301 motions to vacate arbitration awards even in the face of a parallel state statute of limitations. *See Occidental Chem. Corp. v. International Chem. Workers Union*, 853 F.2d 1310, 1315–16 (6th Cir.1988); *American Postal Workers Union v. United States Postal Serv.*, 823 F.2d 466, 475–76 (11th Cir.1987). We reached a contrary result in *Sine v. Local Union No. 992*, 644 F.2d 997 (4th Cir.1981). To the same effect, *see Harry Hoffman Printing, Inc. v. Graphic Communications*, 912 F.2d 608 (2d Cir.1990); *Posadas de Puerto Rico v. Association de Empleados*, 873 F.2d 479 (1st Cir.1989); and *San Diego County Dist. Council of Carpenters v. G.L. Cory*, 685 F.2d 1137 (9th Cir.1982).

Since, however, there is no limitations period in the West Virginia law governing actions to vacate an arbitration award, we do not face a choice between federal and state law. Under these circumstances, we agree with the district court that it is appropriate to turn to an analogous federal statute.

*DelCostello* selected a uniform six-month limitations period for "hybrid" § 301/fair representation suits borrowed from § 10(b). The Court identified some of the policy concerns behind adoption of the six-month limitations period:

> In the labor setting, [as contrasted with the commercial arbitration setting], the employee will often be unsophisticated in collective-bargaining matters, and he will almost always be represented solely by the union. He is called upon, within the limitations period, to evaluate the adequacy of the union's representation, to retain counsel, to investigate substantial matters that were not at issue in the arbitration proceeding, and to frame his suit.

*DelCostello*, 462 U.S. at 165–66, 103 S.Ct. at 2291.

In refusing to apply the oftentimes short state limitations period for vacation of an arbitration award, the Court focused on the problems facing a § 301/fair representation plaintiff. It refused to apply longer state limitations periods because of policy concerns over finality of arbitration proceedings. A critical aspect of the Court's statement, however, was its particular application to a "hybrid" action. While finality concerns likewise militate against adoption of a long limitations period in the case *sub judice*, an action to vacate an arbitration award does not carry with it the other policy considerations concerning limitation periods inherent in a § 301/fair representation suit. An employer such as Power City does not lack the sophistication to be aware of the consequences of an arbitration award. For that matter, a losing employee after such a final award would not be in the potentially unprotected position of a union member contemplating a hybrid action against the Union for failure to fairly represent. Moreover, the principal concerns for the finality and enforcement of arbitration awards are similar in the labor and commercial contexts. In short, we are persuaded that the concerns which in *DelCostello* underscored the Court's reluctance to adopt a shorter limitations period are not present here.

In fact, there are important policy considerations for a shorter limitations period controlling actions to vacate arbitration awards and for having rules that are nationally uniform. *American Postal Workers Union, supra*. So, even facing the language of 9 U.S.C. § 1 (United States Arbitration Act) excluding employment contracts from its coverage, we think the district court correctly "borrowed" the limitations period from that act in a case such as this where there is no controlling state law.

### III

We also agree that the district court correctly granted summary judgment in favor of the Union. On appeal, Power City complains that it was unable to take adequate discovery and did not attend or

participate in any of the grievance proceedings.

As to the discovery contention, Power City was not precluded from pursuing discovery during the pendency of its motion before the district court. Any failure to complete discovery during this action's fifteen-month lifespan, therefore cannot be attributed to error on the part of the district court. As to the latter contention regarding participation in the arbitration proceeding, it is clear that Power City was served with proper notice and concedes it was fully aware of the arbitration proceedings. The arbitration award is valid and fully enforceable despite Power City's absence. *See Sheet Metal Workers v. Tampa Sheet Metal Co., Inc.,* 786 F.2d 1459, 1460 (11th Cir.1986).

■ Finally, an arbitration award is final if the arbitration decision "draws its essence from the collective bargaining agreement," *Holcomb v. Colony Bay Coal Co.,* 852 F.2d 792, 795 (4th Cir.1988) (*quoting United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)), and the award is not procured by fraud and is not against public policy, *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38, 42–43, 108 S.Ct. 364, 370–71, 373–74, 98 L.Ed.2d 286 (1987). The district court found the arbitration award to be legitimate and properly granted summary judgment to the Union. We find no error.

The district court's dismissal of Power City's motion to vacate and the grant of summary judgment in favor of the Union is therefore affirmed.

AFFIRMED.