**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO; Local 953, International Longshoremen's Association, AFL–CIO, Plaintiffs–Appellees,**

v.

**CATANEO INCORPORATED, Defendant–Appellant,**

**Steamship Trade Association of Baltimore, Inc., Amicus Curiae.**

No. 92–1610.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1992.

Decided April 5, 1993.

---

* Hon. Collins J. Seitz, United States Circuit Judge, was limited to voting for panel rehearing.

Ronald Wayne Taylor, Venable, Baetjer & Howard, argued (E. Anne Hamel, Venable, Baetjer & Howard, Baltimore, MD, on brief), for defendant-appellant.

Christine Ann Williams, Abato, Rubenstein & Abato, P.A., Baltimore, MD, for plaintiffs-appellees.

Gil A. Abramson, argued (Andrew C. Topping, Hogan & Hartson, Baltimore, MD, on brief), for amicus curiae.

Before PHILLIPS and WILKINS, Circuit Judges, and SPROUSE, Senior Circuit Judge.

## OPINION

SPROUSE, Senior Circuit Judge:

This appeal involves the efforts of a union to enforce a multi-employer collective bargaining contract against one employer, Cataneo, Inc. ("Cataneo"). The International Longshoremen's Association, AFL–CIO ("ILA"), and Local 953, ILA ("Local 953") originally brought this action in Maryland state court to enforce a grievance committee's decision. The decision implemented a timekeeper provision negotiated on behalf of Cataneo by its employer-bargaining association, the Steamship Trade Association of Baltimore ("STA"). Cataneo removed the case to district court and challenged the STA's authority to bind it. After considering the parties' cross-motions for summary judgment, the district

court held that the STA had Cataneo's authority to negotiate and to contract for the timekeeper provision, and that Cataneo was bound by the agreement. The court also held that Cataneo's other defenses against the grievance committee's decision were time-barred. The court later denied Cataneo's motion for reconsideration. Cataneo appeals all three adverse rulings. We affirm.

## I

Cataneo provides line-handling services for vessels entering and departing the Port of Baltimore, Maryland. Since 1951, Cataneo has been a member of the STA, a nonprofit multi-employer bargaining association of companies operating in the Port of Baltimore that employ members of ILA's local unions.[1] Until March 1990, the STA negotiated with the ILA, the international union that represents dockworkers in the Port of Baltimore, and all locals as a single bargaining unit for all its employer members, including Cataneo. Since the collective bargaining agreement with the STA, the ILA, and all the locals was due to expire on November 30, 1990, the STA planned to negotiate a new master agreement. But on March 9, 1990, Cataneo informed the STA by letter that it was withdrawing from its membership. Cataneo declared that it would bargain separately and directly with the ILA and Local 1429 for a new labor contract.[2]

At about the same time, Local 953,[3] notified the STA that it would bargain separately from the other locals on all terms and conditions of employment affecting its members. The STA recognized Local 953 as a separate bargaining unit and agreed to negotiate two agreements in 1990: one agreement with Local 953 and another with the remaining locals, including Local 1429.[4]

Cataneo's attempt to negotiate with Local 1429 was apparently unsuccessful, and on November 14, 1990, Cataneo sent a second letter to STA reestablishing its membership in the STA and revoking its earlier letter of withdrawal, stating in part:

[The] decision to return to the STA in no way whatsoever changes Cataneo Inc.'s firm position that it has never and does not authorize the STA to bargain on its behalf with any ILA Local other than Local 1429.

In an attempt to clarify that passage after discussions with STA's counsel, Cataneo sent a third letter to the STA on November 15. The letter stated that Cataneo restored to the STA "the same bargaining authority that it had before Cataneo's withdrawal."

Meanwhile, in mid-November 1990, the STA opened negotiations with the ILA locals, including separate negotiations with Local 953. On December 4, 1990, the STA and Local 953 agreed on a new contract, the ILA and Local 953 Checkers' and Clerks' Agreement (the "STA–953 agreement"). The STA members ratified the contract on December 11, 1990, by a nearly unanimous vote.[5] The contract included a timekeeper provision providing:

On any day an Employer hires (12) or more Employees represented by ILA Local 1429, Local 1355 or Reefer Mechanics (Local 333), in any combination, it shall hire a Timekeeper that day.

Cataneo had not previously hired a timekeeper. After being informed of the STA's ratification of the STA–953 agreement, Cataneo sent the STA a letter stating that it did not consider itself bound by the timekeeper provision. A week later, the STA responded declaring that it had retained the authority to bargain with Local 953 on Cataneo's behalf and that the latter was bound by the contract.

---

1. The STA filed an amicus curiae brief on behalf of the union.

2. Cataneo employed members of only one ILA local, Local 1429, the linehandlers unit.

3. Local 953 is the union for steamship checkers, weighers, billers, and timekeepers.

4. Four ILA locals representing certain categories of dockworkers comprised the second unit: Local 333 (cargo handlers), Local 921 (grain handlers), Local 1355 (carpenters), and Local 1429.

5. All members of the STA voted in favor of the collective bargaining agreement except Cataneo, which abstained from voting.

Cataneo refused to comply with the timekeeper provision. Consequently, in January 1991, Local 953 lodged a grievance against Cataneo with the STA. In compliance with the collective bargaining agreement, the STA sent the grievance to the Joint Labor–Management Grievance Committee (the "grievance committee"). Three persons designated by the STA and three persons designated by the Union comprised the grievance committee. Cataneo was one of the three employer designees. The grievance committee deadlocked on this dispute. After the deadlock on March 5, 1991, Local 953 exercised its right under the STA–953 agreement to submit the grievance to arbitration. Before the arbitration hearing was held, however, the grievance committee reconsidered the grievance and voted 5–1 in the Union's favor.[6] Its decision consisted of four rulings: (1) Cataneo was bound by and subject to the STA–953 Agreement; (2) Cataneo had violated the contract by not hiring a timekeeper since January 2, 1991; (3) Cataneo was required to pay wages of $19 per hour, eight hours a day, one day a week, since January 2, 1991, and pay all specified fringe benefits to persons designated by the union; and (4) in the future, Cataneo had to conform with the provisions of the STA–953 Agreement. Cataneo refused to comply with this decision. On August 30, 1991, Local 953 and the ILA brought this enforcement action in the Circuit Court for Baltimore City. Cataneo removed the action to the federal district court of Maryland as governed by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

Once in federal court, both parties moved for summary judgment.[7] On February 5, 1992, the district court granted the union's motion. The court found that in the November 15 letter, Cataneo had authorized the STA to bargain with Local 953; consequently, Cataneo was bound by the STA–953 Agreement. In addition, the district court held that the statute of limitations had run on Cataneo's challenges to the grievance committee's award. On February 25, 1992, Cataneo filed a Motion to Alter or Amend the Judgment, which the district court denied.[8] Cataneo appeals.

**II**

After reviewing the evidence, we agree with the district court that summary judgment was proper in this case because there was no genuine issue of material fact and the union was entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Cataneo does not dispute that the collective bargaining agreement, involved in this controversy, established the grievance and arbitration procedure. Rather, it primarily contends that it did not authorize STA to negotiate with Local 953 and that, in any event, STA had no power to bind any member to a contract without the member's individual ratification. Additionally, it argues that this court should not enforce the grievance

6. Cataneo, of course, cast the minority vote.

7. Cataneo also moved to strike an affidavit attached to the union's motion for summary judgment and to obtain a protective order. The district court denied both motions and neither was appealed.

8. Cataneo's dispute with Local 953 preceded this action. In two separate proceedings, Cataneo filed unfair labor practice charges against Local 953 with the National Labor Relations Board ("NLRB") in August 1990. In both cases, Cataneo argued that it did not recognize Local 953 as a bargaining agent for any of its employees and that it was not bound by the timekeeper provision of the STA–953 Agreement. The NLRB's Regional Director found that the charges were meritless and refused to issue a complaint. The Director also found that Cataneo was bound by the collective bargaining agreement and that the STA–953 Agreement required all members to abide by all contracts entered into by the STA. The Director declared that the contractual language requiring Cataneo to hire a timekeeper was not an unlawful prehire agreement. Cataneo appealed. The two charges were consolidated, and the NLRB's General Counsel declined to issue a complaint on the same grounds. In July 1991, Cataneo filed three additional, similar charges against Local 953. The three cases were consolidated, and the NLRB's Regional Director found that the contract constituted neither an illegal prehire agreement nor an illegal featherbedding agreement. Cataneo appealed again. The NLRB's General Counsel denied the appeal and again refused to issue a complaint.

committee's decision because the agreement itself is an illegal prehire and featherbedding agreement. Further, Cataneo argues that even if it were bound to the agreement, it would not be bound by the grievance committee's decision because the committee did not have the authority to reconvene after the union invoked arbitration.

■ In considering Cataneo's first contention, that it did not authorize STA to bargain on its behalf with Local 953, we conclude that the STA properly negotiated for and bound Cataneo to the contract. It is true that in March 1990 Cataneo announced its withdrawal from the association. As the parties agree, however, Cataneo revoked its "earlier letter of withdrawal" in its November 14 letter. To clarify this statement, Cataneo sent a letter to the STA the next day declaring that it was restoring to the STA "the same bargaining authority it had before Cataneo's withdrawal." It is clear from the record that before its withdrawal Cataneo had authorized the STA to bargain with all ILA locals. Under the "same bargaining authority" language of its November 15 letter, Cataneo then authorized STA to negotiate for it as it had in the past.[9]

Nor is there any merit to Cataneo's contention that STA was not organized for the purpose of binding its individual members to a labor contract without their individual ratification. A reading of the STA's bylaws compels the opposite conclusion. Article VI, Section 5 of the STA's bylaws established a "Trade Practice Committee" to conduct collective bargaining for the association. It provides in part:

The Committee shall make recommendations to the Association as to the advisability of entering into any agreements with labor unions. Any such agreement shall be approved only by a majority of members present at a regular or special meeting. Such majority shall also constitute a majority of the steamship owners and agents included in the membership of the Association.

. . . .

The Trade Practice Committee is further empowered to hear complaints against, make findings of fact, and impose fines as noted herein against any member found to have at any time unilaterally made changes in, modification of, or adjustments of the various labor agreements entered into between the Association acting for all its members. . . . If the Committee finds the complained against member has violated the provisions referred to herein, it will impose a fine of Five Thousand Dollars ($5,000.00) on the member for each violation of policy. Such a fine may not be imposed without a majority of the entire Committee voting in the affirmative.

The bylaws then emphasize the majority authority to bind all members to a negotiated contract:

[A]ny member who hereafter unilaterally engages in changing, modifying, interpreting, or adjusting any of the terms of the various labor agreements with the ILA shall be subject to censure by the Association acting as a body and if the same member persists in such action after censure, such member shall be subject to expulsion from the Association by action taken in accordance with the provisions of the Association's by-laws.

Thus, the unambiguous language of the STA's bylaws authorized the STA to negotiate labor contracts for its members and provided that ratification by a majority of the association would bind all members to a negotiated contract. Regardless of the effect that Cataneo's March withdrawal might have had on its status as a member of the association, its reassertion of membership in its November 14 and November 15 letters re-established the STA's authority to bind it to a collective bargaining agreement in the same manner as the STA would bind any member of the association. In this case, the entire STA membership,

---

9. Even if we interpreted the November letters as a grant of only partial authority to the STA to negotiate with only one local, we would reach the same result. A member of the STA, that has agreed to bargain with a multiunion group, cannot limit its bargaining authority to certain locals within that group. *See I.T.O. Corp. v. NLRB*, 818 F.2d 1108, 1112 (4th Cir.1987).

except for Cataneo, ratified the STA–953 agreement on December 11, 1990.

 Cataneo's remaining arguments can be summarized as attacks on the grievance committee's decision that Cataneo was subject to the timekeeper provision of the STA–953 agreement. The district court, in our view, correctly held that Maryland's thirty-day statute of limitations [10] for a motion to vacate an arbitration award barred these defenses.[11]

Cataneo contends, however, that the district court applied the wrong statute of limitations to the grievance committee's resolution of the union's claim. Instead of applying Maryland's thirty-day statute of limitations governing a motion to vacate an arbitration award, Cataneo argues that the district court should have applied the six-month statute of limitations applicable to section 10(b) of the National Labor Relations Act ("NLRA"), recognized in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983). We disagree.

Of course, section 301 of the LMRA provides no statute of limitations period. *Sheet Metal Workers Int'l Ass'n v. Power City Plumbing & Heating, Inc.*, 934 F.2d 557, 559 (4th Cir.1991); *see DelCostello*,

462 U.S. at 158, 103 S.Ct. at 2287. To fill this void, courts must look to the most analogous state statute. *DelCostello*, 462 U.S. at 158, 103 S.Ct. at 2287. When there is no analogous state statute or "when a rule from elsewhere in federal law clearly provides a closer analogy than available in state statutes, and when the federal policies at stake" make that rule more appropriate, then a court must borrow the statute of limitations from a suitable federal statute. *Id.* at 172, 103 S.Ct. at 2294; *see Power City*, 934 F.2d at 559–60. The Supreme Court has made clear that the six-month statute of limitations provided in section 10(b) of the NLRA, 29 U.S.C. § 160(b), applies to any "hybrid" section 301 action involving claims of an union's unfair representation and an employer's breach of a collective bargaining agreement. *DelCostello*, 462 U.S. at 172, 103 S.Ct. at 2294.[12] The issue before us, however, is the appropriate statute of limitations for a section 301 action attacking a grievance committee's award. We addressed the same issue in *Power City*, and we find our reasoning in that case applicable here.

In *Power City*, the union sued an employer to enforce an arbitration award pursuant to section 301 of the LMRA. *Power City*, 934 F.2d at 559. The employer had

---

**10.** Section 3–224 of the Maryland Code provides that "a petition to vacate an arbitration award shall be filed within 30 days after delivery of a copy of the award to the petitioner." *See Schaper & Associates v. Soleimanzadeh*, 87 Md.App. 555, 590 A.2d 583, 585 (1991) (holding that Maryland's thirty-day statute of limitations to vacate an arbitration award is mandatory); *Board of Educ. v. Education Ass'n*, 286 Md. 358, 408 A.2d 89, 92–93 (1979) (same).

**11.** A grievance committee's decision is entitled to substantial deference, similar to that of an arbitration award, and cannot be overturned as long as it is based upon some support in the record. *Service Employees Int'l Union, Local 36 v. City Cleaning Co.*, 982 F.2d 89, 91–92 (3d Cir.1992); *Eichleay Corp. v. International Ass'n of Iron Workers*, 944 F.2d 1047, 1056 n. 7 (3d Cir.1991); *see Tongay v. Kroger Co.*, 860 F.2d 298, 299 (8th Cir.1988) (holding that grievance committee's decisions have the same force as arbitrator's decisions); *Grant v. Burlington Indus.*, 832 F.2d 76, 80–81 (7th Cir.1987) (same); *Early v. Eastern Transfer*, 699 F.2d 552, 559–60 (1st Cir.) (same), *cert. denied*, 464 U.S. 824, 104

S.Ct. 93, 78 L.Ed.2d 100 (1983). Similarly, a completed grievance procedure, and defenses to it, are treated the same as an arbitration award for statute of limitations purposes. *See Local Union No. 36, Sheet Metal Wkrs. v. Atlas Air Conditioning Co.*, 926 F.2d 770, 771–72 (8th Cir. 1991).

**12.** In *DelCostello*, the Supreme Court declined to borrow a state statute of limitations. *DelCostello*, 462 U.S. at 161–63, 103 S.Ct. at 2289. But as we pointed out in *Power City* that holding specifically addressed the unique circumstances involved in unfair representation cases. *Power City*, 934 F.2d at 560. In addition, *DelCostello* distinguished, rather than overruled, *International Union, UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), which applied a state statute of limitations period to the union's action alleging breach of the collective bargaining agreement where there was no agreement to submit disputes to arbitration. *DelCostello*, 462 U.S. at 162–63, 103 S.Ct. at 2289; *see Reed v. United Trans. Union*, 488 U.S. 319, 329 n. 5, 109 S.Ct. 621, 628 n. 5, 102 L.Ed.2d 665 (1989).

refused to appear at the grievance proceedings contending that it was not bound by grievance provisions in the collective bargaining agreement. The district court applied section 12 of the United States Arbitration Act's three-month statute of limitations and found the employer's motion to vacate the arbitration award time-barred.[13] *Id.* at 560. On appeal, the employer claimed that the district court erred because it did not apply the six-month limitations period used in *DelCostello. Id.* We disagreed. We found that none of the public policy concerns identified by the Supreme Court in *DelCostello*, such as the unsophistication of employees or their ignorance of their rights, were present in *Power City* to mandate the imposition of a longer statute of limitations. *Id.*

Similarly, none of the public policies, elucidated in *DelCostello*, mandating the application of a longer statute of limitations are present here. This case is not a "hybrid" section 301 action. It is a straightforward section 301 suit concerning a dispute over a contractual provision. *See International Bhd. v. Hechler*, 481 U.S. 851, 857, 107 S.Ct. 2161, 2165, 95 L.Ed.2d 791 (1987); *DelCostello*, 462 U.S. at 162–163, 103 S.Ct. at 2289; *International Union, UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 705 n. 7, 86 S.Ct. 1107, 1113 n. 7, 16 L.Ed.2d 192 (1966). Similar to the employer in *Power City*, Cataneo is sophisticated and clearly not ignorant of its rights. The evidence demonstrated that the president of Cataneo was a member of the grievance committee, knew about the grievance decision immediately, and knew of the company's right to appeal that decision.

Shorter limitations periods controlling defenses against grievance committee decisions also effectuate federal labor laws'

overriding policy goal to resolve labor disputes quickly. *See DelCostello*, 462 U.S. at 168, 103 S.Ct. at 2292; *Hoosier Cardinal*, 383 U.S. at 707, 86 S.Ct. at 1114. Thus, in our view, the district court correctly applied the thirty-day Maryland statute of limitations.[14] On June 12, 1991, the grievance committee ruled that Cataneo had to observe the contract provisions. Cataneo did not raise the validity of the contract or the grievance procedure issues until its cross-motion for summary judgment on October 15, 1991, four months after the grievance committee's decision had become final. It could not sit back with impunity until faced with a motion in federal court and assert a defense that it could have raised in the grievance proceeding or in a motion to vacate. *Local Union 36, Sheet Metal Wkrs. v. Atlas Air Conditioning Co.*, 926 F.2d 770, 772 (8th Cir.1991). Therefore, in our view, Cataneo's defenses were time-barred.[15]

### III

Cataneo also contests the district court's decision to deny reconsideration of its judgment. For reconsideration, a motion must: (1) be timely, (2) rest on a meritorious defense, (3) show an absence of prejudice to the opposing party, and (4) demonstrate exceptional circumstances. *Smith v. Bounds*, 813 F.2d 1299, 1303 (4th Cir.1987). We will overturn a district court's decision to deny reconsideration if there is an abuse of discretion. *Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989).

The district court found that although the motion here was timely filed and no prejudice to the union was alleged, Cataneo failed to assert a meritorious defense or

---

**13.** The court declared that there was no analogous state statute. *Id.* at 559.

**14.** Other courts have held that the six-month statute of limitations applied in *DelCostello* does not apply to breach-of-collective-bargaining actions brought by unions and that there is a presumption that state statutes of limitations apply. *Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1216 (6th Cir.), *cert. denied*, 484 U.S. 820, 108 S.Ct. 77, 98 L.Ed.2d 40 (1987); *Taylor v. Ford Motor Co.*, 761 F.2d 931, 933 n. 2 (3d

Cir.1985), *cert. denied*, 474 U.S. 1081, 106 S.Ct. 849, 88 L.Ed.2d 890 (1986).

**15.** Contrary to Cataneo's contention, the rule we recognized in *A.T. Massey Coal Co. v. International Union, United Mine Wkrs. of America*, 799 F.2d 142, 146 (4th Cir.1986), stating that a plaintiff cannot bring a section 301 action to challenge the validity of a contract, has no application to the facts of this case.

exceptional circumstances that would require reconsideration. The court stated that Cataneo's motion merely "rehashed the same arguments" that the court had rejected. We find no abuse of discretion.

In view of the above, the judgment of the district court is affirmed.

*AFFIRMED.*