**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1924**

DURHAM SCHOOL SERVICES LP,

       Plaintiff - Appellant,

    v.

GENERAL DRIVERS WAREHOUSEMEN AND HELPERS LOCAL UNION
NO 509, a/w International Brotherhood of Teamsters,

       Defendant – Appellee,

    and

PIEDMONT GRIEVANCE COMMITTEE; TOM HOUVOURAS; WAYNE
GIBBS,

       Third Party Defendants.

Appeal from the United States District Court for the District of South Carolina, at
Charleston. David C. Norton, District Judge. (2:14-cv-01241-DCN)

Argued: December 6, 2016             Decided: February 15, 2017

Before WILKINSON, AGEE, and HARRIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Charles Preyer Roberts, III, CONSTANGY, BROOKS, SMITH & PROPHETE, LLC, Winston-Salem, North Carolina, for Appellant. Jonathan G. Axelrod, BEINS, AXELROD, P.C., Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After concluding that a regional grievance committee's decision "drew its essence from" and was "arguably construing or applying" a collective bargaining agreement between Durham School Services, L.P., ("Durham") and General Drivers, Warehousemen and Helpers, Local Union No. 509 ("the Union"), the district court held that the decision in favor of the Union was enforceable. J.A. 738. Consequently, it denied Durham's motion for summary judgment, granted the Union's motion for the same, and entered judgment in favor of the Union. Durham now appeals. For the reasons that follow, we affirm the judgment of the district court.

I.

Durham "provid[es] bus transportation to students in Charleston County," South Carolina. J.A. 726. In 2013, video surveillance footage captured a Durham employee— bus driver Marquette Alston—using her cell phone on the job. Under the collective bargaining agreement ("Agreement") governing Alston's employment, Durham could bypass the usual progressive discipline procedure and immediately discharge bus drivers after the first offense for "use of personal items such as cell phones while operating a passenger transport vehicle." J.A. 86–87. Upon learning of Alston's cell-phone usage, Durham notified Alston that it was terminating her employment.

Alston followed the Agreement's grievance procedure, arguing that she had been unjustly terminated because mitigating circumstances made a lesser punishment more appropriate. After her grievance was denied in the initial local stages, she pursued the

3

next step authorized under the Agreement, referring her "unjust termination" to the Piedmont Grievance Committee (the "Committee"), a regional authority comprised of representatives from participating employers and unions.  J.A. 279.

The Committee meets regularly to hear disputes among its members; it sits in panels consisting of a minimum of two employer and two union representatives who are not affiliated with the aggrieved parties.  Because Alston's grievance involved a termination of employment, the Committee's bylaws provided that Durham would present any evidence relevant to its case first, "after which [the Union] shall present [its] version of [the] controversy.  Each party shall then be allowed one (1) rebuttal."  J.A. 102.

In presenting its case-in-chief before the Committee, Durham called several witnesses to describe the Agreement, Alston's offense, and the decision to terminate Alston's employment.  It also showed the video footage of Alston using her cell phone on the bus.

After Durham closed its case, the Committee panel invited the Union to present its case.  Instead, the Union raised a point of order asserting that Durham "never presented a discharge letter. . . . This panel . . . has made these rulings [in prior Committee cases] that if there is no [discharge letter] presented[,] there is no discharge.  That's the Point of Order."  J.A. 324.

Durham replied that it had not presented the letter because "[n]obody denies that [Alston] was discharged" in accordance with the Agreement.  J.A. 325.  Durham offered to produce the termination letter immediately, if the Committee wanted a copy.  A

4

Committee panel member questioned Durham, confirming that the employer had a copy of the Committee's rules and procedures and that it was "aware that [it's] able to present any and all evidence in support of [its] case to the Committee." J.A. 326. Durham replied that although it was aware of the Committee's bylaws, it did not read them to require the presentation of undisputed evidence such as the letter terminating Alston's employment.

The Committee panel broke for an executive session and returned the following decision: "[T]he Point of Order by the Union is upheld. Fee Company." J.A. 328.

When Durham did not reinstate Alston after the Committee rendered its decision, the Union contacted the Committee and asked it to document what the prior ruling meant. Two Committee members, one a panel member and one a non-panel member who served as the Committee's co-Chairman, responded, stating that the Union had prevailed.

Durham filed a complaint against the Union in the U.S. District Court for the District of South Carolina seeking to bar enforcement of the Committee's decision as a violation of § 301 of the Labor Management Relations Act of 1959, 29 U.S.C. § 185. Durham maintained that the Committee's decision "ignored the plain language of the [Agreement], disregarded the [Committee's] own By-Laws, and failed to draw its essence from the" Agreement and bylaws. J.A. 18. It also asserted that the Committee acted in bad faith and had denied Durham "a fundamentally fair hearing." J.A. 18. The Union filed a counterclaim seeking enforcement of the Committee's decision.

Both parties filed motions for summary judgment. In support of its motion, the Union submitted depositions from two Committee panel members: Roosevelt A. Via (a

5

union member) and Thomas L. Houvouras (an employer member). Both panel members described prior Committee rulings that had been decided on similar points of order, where no discharge letter had been made part of the employer's case. Via explained that in this case, because Durham was the moving party in a case involving "unjust termination," the letter of termination should have been presented as part of its case. He stated that during their deliberation of the grievance, the panel members had discussed their understanding of the Committee bylaws and the role that the Committee's past decisions should play in their decision-making process, observing that "if the union brought a case [to the Committee] that did not have a grievance in it, . . . the union would get the same ruling, because the grievance itself is the moving part of the grievance process. Just like the termination letter would have been the moving part of the company's process." J.A. 240. In addition, both panel members explained that the focus of the point of order is to raise a procedural objection, and that the letter should have been part of Durham's case-in-chief; the panel did not allow Durham to submit the letter after the point of order had been made because it was too late to do so then.

The district court granted the Union's motion, first setting out its highly deferential standard of review and then concluding that the Committee panel members' deposition testimony "provided a basis in the by-laws and the [Agreement] for the [Committee's] decision to uphold the Union's point of order and reinstate Alston." J.A. 738. In sum, the district court held that because the Committee was "arguably construing or applying the contract and acting within the scope of [its] authority," the Committee's decision "draws its essence from the [Agreement] and [Committee] by-laws." J.A. 738.

6

As such, the court concluded the Committee's decision was enforceable and it entered judgment in favor of the Union.

Durham noted a timely appeal, and we have jurisdiction under 28 U.S.C. § 1291.

II.

On appeal, Durham continues to argue that the Committee's decision is unenforceable because it decided an issue not submitted to it, that it denied Durham a fair hearing in accordance with the Agreement and Committee bylaws, and it issued a decision that contradicts the Agreement's plain language allowing Durham to terminate Alston's employment. We review the district court's grant of summary judgment de novo, applying the same standard as the district court. *Hunter v. Town of Mocksville*, 789 F.3d 389, 395 (4th Cir. 2015). Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party (Durham), "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See id.*; *see also* Fed. R. Civ. P. 56(a). We also review the district court's determination of whether the Committee exceeded the scope of its authority de novo, as that is a question of law. *See Island Creek Coal Co. v. District 28, UMWA*, 29 F.3d 126, 129 (4th Cir. 1994).

That said, our review of the Committee's conduct is much narrower. Out of respect for parties' mutually bargained-for terms of a collective bargaining agreement and recognizing the efficiency and finality of the labor negotiation process, courts take a very deferential approach to reviewing decisions arising out of that process. Although

7

the referral to the Committee is not identical to arbitration, because the Agreement specified that the parties would be bound by any non-deadlocked decision of the Committee, the Court approaches the Committee's decision in the same way it would an arbitration award. *Int'l Longshoremen's Ass'n v. Cataneo, Inc.*, 990 F.2d 794, 799 n.11 (4th Cir. 1993) ("A grievance committee's decision is entitled to substantial deference, similar to that of an arbitration award, and cannot be overturned as long as it is based upon some support in the record.").

Consequently, our review of the Committee's decision in this case is "severely limited" and "among the narrowest known to the law." *District 17, UMW v. Island Creek Coal Co.*, 179 F.3d 133, 136-37 (4th Cir. 1999) (internal quotation marks omitted). In particular, "courts are not authorized to reconsider the merits of [a decision] even though the parties may allege that the [decision] rests on errors of fact or on misinterpretation of the contract." *United States v. Paperworker's Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987). "[A]s long as the [Committee] is even arguably construing or applying the contract and acting within the scope of [its] authority, that a court is convinced [it] committed serious error does not suffice to overturn [its] decision." *Id.* at 38. We will only vacate the Committee's decision if "it violates clearly established public policy, fails to draw its essence from the collective bargaining agreement, or reflects merely the [decision-maker's] personal notions of right and wrong." *Yuasa, Inc. v. Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers*, 224 F.3d 316, 321 (4th Cir. 2000). Absent evidence that the Committee flouted its contracted-for responsibilities to

8

adjudicate disputes under the Agreement, the Court must affirm the Committee's decision.

With these principles in mind, we turn to Durham's arguments. At the outset, the Committee did not act beyond the scope of the grievance before it. The referral was broadly worded, listing the grievance to be decided by the Committee as Alston's "unjust termination." J.A. 279. Just as broadly, the referral cited "Article 20 and all applicable articles" of the Agreement as the provisions that had been violated. J.A. 279. Article 20 covers employee discipline, and includes everything from the progressive disciplinary system and conduct for which an individual can be discharged based on the first offense to the procedure for notifying employees and the Union of disciplinary action, including termination of employment. Regardless of the parties' understanding of their dispute, the referred grievance encompassed the entirety of Alston's termination of employment. The Committee thus acted within the scope of its authority to resolve the submitted grievance when it determined that absent a letter of termination, Durham could not prove its case-in-chief and the Union should prevail on its point of order.

Durham next contends the Committee denied it a fair hearing by disregarding the Agreement and the Committee bylaws, and by requiring Durham to do something the text of those provisions did not plainly demand. We disagree. The Committee's decision draws its essence from the parties' Agreement. Article 12 of the Agreement states that unresolved grievances will be submitted to the Committee and that the Committee's decision will be "final and binding." J.A. 80. It further notes that grievances will be "heard in accordance with the Rules of Procedure of" the Committee, and it is not

9

disputed that these Rules of Procedure are the Committee's bylaws. J.A. 80. Article VII of the Committee bylaws, in turn, allow parties to "present any evidence bearing on the facts of a particular case" in their case-in-chief, after which the other side presents its case, followed by one rebuttal each. J.A. 101. The bylaws instruct the panel chairman to "maintain order and make final rulings on all Points of Order, consistent with" Robert's Rules of Order. J.A. 102. And the Committee's decision must be made "based on the pertinent facts presented by the parties." J.A. 102. Nothing in what occurred below violates this process.

The parties submitted the matter of Alston's unjust termination to the Committee. Consistent with its bylaws, the Committee allowed Durham to present the totality of its case-in-chief. It then proceeded to allow the Union to have its turn, but instead, the Union raised a point of order challenging the sufficiency of Durham's case-in-chief. Points of order are a recognized procedural practice expressly authorized (though not detailed) in the Committee bylaws. That point of order halted the proceedings and required a ruling before continuing. As it so happened, ruling on the point of order resolved the dispute submitted to the Committee as to whether there was an unjust termination. That the Committee's decision was based on a procedural ruling following its conclusion that Durham had failed to prove a necessary part of its case does not mean that the Committee's decision or process was fundamentally unfair or ignored either the Agreement or the Committee's bylaws. At bottom, Durham disagrees with the Committee's interpretation and application of the rules governing its hearing, but it has

10

not shown that the Committee was not attempting to construe and apply those rules. Absent such proof, its argument fails.

The depositions from Committee panel members Via and Houvouras confirm our assessment that the Committee's decision was based on its understanding and interpretation of the Agreement and Committee bylaws. They also confirm that the Committee was acting in accord with its past interpretation of similar points of order. Even if the Court were to disagree with the Committee's interpretation, we cannot conclude that the Committee panel was enforcing its own "notions of industrial justice" or "right and wrong" rather than attempting to construe the Agreement and its incorporated rules. *E.g.*, *Misco*, 484 U.S. at 38 (recounting that our review is for whether the decisionmaker was "even arguably construing or applying the contract"); *Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996) (emphasizing that the Court's review is to "determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it").

The record also belies Durham's contention that the entire Committee "process was permeated by bad faith." Appellant's Opening Br. 23. The crux of Durham's argument on this point is that the Committee improperly adjudicated the case by means of a procedural ruling that in turn was based on an unwritten interpretation of its bylaws.

But it would be impossible for a collective bargaining agreement and other rules governing arbitration-like proceedings to contemplate every possible scenario. Once the matter was referred to the Committee, the Committee had to interpret and apply the

11

governing written rules. Consistent with this understanding, the Supreme Court has expressly recognized that in carrying out its duties an arbitrator—or, as here, the Committee—is "'not confined to the express provisions of the contract,' but may also look to other sources—including the 'industrial common law'—for help in construing the agreement." *Nat'l Postal Mail Handlers Union v. Am. Postal Workers Union*, 589 F.3d 437, 443 (D.C. Cir. 2009) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82 (1960)); *see also Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960) (stating that arbitrators may "look for guidance from many sources" during the performance of their duties).

And while it may be preferable for disputes to be decided on their merits, courts and other adjudicators often make procedural rulings that end up being dispositive of the entire dispute. That consequence alone is not evidence of bad faith. Courts have a similar mechanism under Rule 50(a) of the Federal Rules of Civil Procedure. As the Union states, the Committee's use of a point of order to assess the sufficiency of Durham's case-in-chief to proceed was "analogous to a motion under Rule 50(a) of the Federal Rules of Civil Procedure, which authorizes a court to dismiss a case if the party with the burden of proof fails to present a *prima facie* case." Response Br. 27. The above principles demonstrate that the Committee did not engage in bad faith by relying on grounds that were not expressly set out in the Agreement or Committee bylaws to adjudicate the parties' grievance.

Lastly, Durham urges that the Committee's decision cannot be enforced because it contradicts both the plain language of the Agreement, which authorized Durham to

12

terminate Alston's employment upon the first cell phone violation, and the undisputed videotape evidence depicting Alston violating that policy. This argument improperly asks us to engage the merits of the parties' dispute. The Supreme Court has unequivocally reiterated that "courts . . . have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." *United Steelworkers of America v. Am. Mfg. Co.*, 363 U.S. 564, 567-68 (1960); *Enterprise Wheel*, 363 U.S. at 599 (stating that the "proper approach" for courts is to "refus[e] . . . to review the merits" of a labor arbitration award). Instead, the Court's authority to review the Committee's decision is limited to the question of whether the Committee "did [its] job." *Yuasa*, 224 F.3d at 321. Having determined that it did, our review ends.

## III.

For the aforementioned reasons, we affirm the district court's grant of summary judgment to the Union.

*AFFIRMED*

13